### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### BARKER STEEL COMPANY, INC., Respondent.

### No. 85–2035.

United States Court of Appeals, First Circuit.

Heard June 6, 1986.

Decided Sept. 5, 1986.

John F. Welsh, Washington, D.C., with whom Howard E. Perlstein, Rosemary M.

Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., were on brief for petitioner.

David F. Johnson, Boston, Mass., with whom Jerome H. Somers and Goodwin, Procter & Hoar, Boston, Mass., were on brief for respondent.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This case is before us upon the application of the National Labor Relations Board (the Board) for enforcement of an order issued on September 30, 1985 against Barker Steel Company, Inc. (Barker Steel).[1] The Board found that Barker Steel violated Sections 8(a)(1) and (5) of the National Labor Relations Act (the Act), 28 U.S.C. §§ 158(a)(5) and (1), by refusing to bargain with the Excavating and Building Material Teamsters, Local Union No. 379, (IBTCW & HA) (the Union), a labor-organization certified by the Board as exclusive bargaining representative of a unit of employees of Barker Steel.

This unit is the product of an agreement between the Union and Barker Steel, incorporated into a Stipulation for Certification Upon Consent Election on June 1, 1984 and thereafter approved by the Regional Director of the Board.[2] The agreed-upon unit includes:

> All full-time and regular part-time employees employed by the Employer at its 42 School Street, Watertown, Massachusetts location, but excluding office clerical employees, sales employees, managerial employees, engineers, estimators, truck drivers, guards and supervisors as defined in the Act.

Pursuant to this stipulation the Board conducted an election on July 13, 1984, the outcome of which was that nine (9) ballots

---

1. The Board order is reported at 276 N.L.R.B. No. 108.

2. Board Case No. 1–RC–18170.

were cast in favor of union representation and nine (9) against. There was also one additional ballot, that of Edward Backer, which was challenged by the Board agent that supervised the election because Backer's name did not appear on the voter eligibility list furnished by Barker Steel. It is Backer's eligibility to vote that lies at the heart of the present controversy.

The Regional Director initiated an administrative investigation [3] concerning Backer's voting eligibility, which concluded with a ruling by the Board that Backer's vote should be opened and counted. The underlying basis for this decision was the Board's conclusion to the effect that the consent election agreement did not clearly express an intent to exclude Backer from the bargaining unit. In view of that conclusion, the Board felt free to apply its general rules regarding the appropriateness of Backer's inclusion in the unit. It proceeded to include Backer in the unit because it found that Barker Steel and BNP Trucking Inc. (BNP), on whose payroll Backer appeared, were a single employer, and because it concluded that Backer shared a community of interests with the warehouse employees of Barker Steel, who were included in the unit.

Upon opening of the challenged ballot, it was revealed that it favored union representation. This vote, when added to the original votes cast in favor of the union, established a majority in favor of union representation. Thereafter, the Regional Director issued a certification to the Union as the collective bargaining agent of the unit in question.

On May 2, 1985, the Union requested that Barker Steel commence negotiations for a collective bargaining contract. Barker Steel, however, refused to abide by the Board's ruling or the union's demand to negotiate. The Union filed unfair labor practice charges and eventually the Board ruled that Barker Steel violated Sections 8(a)(1) and (5) of the Act. As part of that ruling, the Board issued a cease and desist

order requiring, among other things, that Barker Steel bargain with the Union.

The Board's request for enforcement of this order is challenged by Barker Steel principally on the ground that the Board's decision runs contrary to the parties' election stipulation. It claims that, pursuant to this agreement, Backer is excluded from the bargaining unit because he is an employee of BNP rather than Barker Steel, who is the employer named in the Stipulation. Barker Steel also claims that Backer is a "truck driver" and is thus specifically excluded from the unit.

*Interpretation of the election agreement*

If a dispute arises concerning an employee's eligibility to vote in a stipulated unit election, the Board's function is limited to ascertaining the parties' intent with regard to the disputed employee. *Knapp-Sherill Co. v. N.L.R.B.*, 488 F.2d 655, 659 (5th Cir.), *cert. denied*, 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974). If the intent of the parties concerning the challenged voter is expressed in the stipulation in clear and unambiguous terms, the Board will hold the parties to their literal agreement. *Methodist Home v. N.L.R.B.*, 596 F.2d 1173, 1176 (4th Cir.1979). If the stipulation is ambiguous, however, as in the case of any contract, "the primary question … is [determining] what the parties meant." *N.L.R.B. v. Sonoma Vineyards, Inc.*, 727 F.2d 860, 866 (9th Cir.), *cert. denied*, 469 U.S. 836, 105 S.Ct. 130, 83 L.Ed.2d 71 (1984). Thus, the Board "has authority to interpret the agreement according to what it finds to have been the intent of the parties." *New England Lumber v. N.L.R.B.*, 646 F.2d 1, 3 (1st Cir.1981). The Board's findings must be sustained if supported by substantial evidence on the record as a whole. 29 U.S.C. § 160(e); *N.L.R.B. v. Pilgrim Foods, Inc.*, 591 F.2d 110, 111 (1st Cir.1978).

Testing the Board's decision against the legal standards previously enunciated, we cannot agree with its reasoning or conclusions or that they are supported by the record as a whole.

**3.** *See* 29 C.F.R. 102.69.

■ Paragraph 8 of the Stipulation, describes "[t]he Employer, *Barker Steel Company, Inc.,*" as a "Massachusetts Corporation engaged in the fabrication of steel reinforcing bars at its 42 School Street, Watertown, Massachusetts location." (Emphasis supplied). The language of Paragraph 12, indicates that it was the "employees employed by [*this*] Employer" that the parties intended to include in the appropriate collective unit. *Id.* It is *that* employer's payroll which was designated in Paragraph 10 as the basis for the preparation of the eligibility list, and on whose premises Paragraph 11 stated that the election would be held. Moreover, Barker Steel was the one signing the agreement with the Union, and to whom the Regional Director imparted his approval of the stipulation. Further, the description of the Employer in Paragraph 8 simply does not fit BNP. BNP is engaged in the *transportation* of Steel products, not in manufacture, as is Barker Steel.

In view of the above, it is spurious to contend that it was the intention of either Barker Steel or the Union at the time of the signing of the stipulation, to include in the unit the employees of BNP. Had this been the intention of the parties they could easily have specified that additional entity as an employer or as a joint employer, *e.g.,* Barker Steel/BNP. In contrast, however, there is no evidence that *any* mention was even made by anyone concerning BNP. Further, there is no evidence that the Union representative protested the failure to include BNP employees on the eligibility list when he inspected the list prior to the election. In a unit as small as the present one, it would not be far-fetched to assume that the representative of the Union would have been alerted by the exclusion of a substantial number of eligible employees, *e.g.,* all the BNP employees not on the list, if it had been the intention of the parties to include such persons in the agreed unit. It is also fair to assume that it was not by mere coincidence that no other employee of BNP attempted to vote in this election. All of these circumstances add up to a clear indication that *none* of the parties to this agreement considered BNP employees as belonging to the stipulated unit.

■ The joint employer issue is a red herring. It has no relevance to a determination regarding the *intention* of the parties in signing the consent agreement. As we have indicated, the Board need go no further than the plain words of the Stipulation to determine who is the employer named in that document. More in point, however, the issue raised by this appeal is not whether the Board could find that a joint unit of Barker Steel and BNP employees would be appropriate because they are a joint employer. We shall grant *arguendo* that such a finding could be made either after consent of the parties or by use of the Board's adjudicative-administrative procedures. That, however, is not presently in contention. What is at issue is whether the parties *agreed* to an election in which the named employer was a joint employer composed of Barker Steel/BNP employees. On that issue, *i.e.,* the determination of intention of the parties, the question of whether the Board has the *power* to make such a ruling under other circumstances, is totally irrelevant. On that issue only the intention of the parties at the time of the signing of the agreement is relevant.

We have already concluded that the intention of the parties was to include only Barker Steel employees in this unit. Because our ruling on this issue is dispositive, we need not discuss or decide the remaining questions raised by the parties.

*The request for enforcement of the Board order is denied.*