CONSTRUCTION AND GENERAL LABORERS' LOCAL UNION NO. 190, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 92–1066.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 22, 1993.

Decided Aug. 6, 1993.

Theodore T. Green, Washington, DC, for petitioner.

Richard A. Cohen, Atty., N.L.R.B. with whom Jerry M. Hunter, Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, and Collis Suzanne Stocking, Supervisory Atty., N.L.R.B., Washington, DC, were on the brief for respondent. Howard E. Perlstein, Atty., N.L.R.B., Washington, DC, also entered an appearance for respondent.

Before EDWARDS, D.H. GINSBURG, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The Laborers' International Union, Local 190 petitions for review of work assignment and unfair labor practice decisions made by the National Labor Relations Board (Board or NLRB), and the Board cross-applies for enforcement of its order. We remand the case for the Board to consider whether an illicit arrangement between an employer and a rival union deprived the Board of jurisdiction over the work assignment dispute.

## I. Background

Sweet Associates is a general contractor on building projects in and around Albany, New York. At the time the dispute in question arose, Sweet had a collective bargaining agreement (CBA) with Local 190 that prohibited Sweet from subcontracting work to any employer that was not either a signatory to the agreement or an employer of workers "represented by another Union ... affiliated with the AFL–CIO."

ACMAT is a general renovation contractor specializing in asbestos-abatement work. ACMAT historically used composite crews for asbestos-abatement work, which resulted in conflicts over the distribution of the work among the various unions represented at the jobsite. In 1987 ACMAT and the Sheet Metal Workers Union, an AFL–CIO affiliate, executed a nationwide CBA providing that the Sheet Metal Workers would perform all asbestos-abatement work for ACMAT. ACMAT claimed, and the Board found, that ACMAT chose the Sheet Metal Workers because they were trained in all phases of asbestos abatement.

In May 1989 Sweet bid on and got a contract to demolish the third floor of the Old State Education Building (OSEB) in Albany, including asbestos-abatement work. Robert Fortune, Sweet's president, told Sam Fresina, the business representative for Local 190, that Sweet would probably subcontract the asbestos work to ACMAT. Fresina indicated that hiring ACMAT would be "a problem" and that there would be demonstrations if Local 190 did not get the work. Fresina also said that he would meet with an ACMAT representative—and thus presumably not press his objection to ACMAT's receipt of the contract—if ACMAT was willing exclusively to use employees represented by Local 190 on the OSEB job. In the event, however, Sweet subcontracted the work to ACMAT, which performed the contract without incident using Sheet Metal Workers.

In October 1989 ACMAT filed with the Board a charge that Local 190 had violated § 8(b)(4)(ii)(D) of the National Labor Relations Act (Act), 29 U.S.C. § 158(b)(4)(ii)(D), by threatening a labor disruption in an effort to force ACMAT to assign work to its members. In December 1990 the Board issued a decision after a hearing held under § 10(k) of the Act, which provides that the Board may

hear and determine the dispute "whenever it is charged that any person has engaged in an unfair labor practice" in violation of § 8(b)(4)(ii)(D).

The Board awarded the work to the Sheet Metal Workers on the basis of ACMAT's preference, past practice, and economy and efficiency of operations. The Board refused to consider evidence proffered by Local 190 to show that ACMAT had signed a CBA with the Sheet Metal Workers Union only after (and presumably because) the Sheet Metal Workers Pension Fund had made a large investment in ACMAT. The Board stated that the "issue in this proceeding is the identity of the employees entitled to perform the work, not the identity of their representative," *Construction and General Laborers' Union No. 190*, 300 NLRB No. 154 (Dec. 31, 1990)—somewhat cryptically inasmuch as Local 190 questioned the conduct, not the identity, of the representative.

When Local 190 failed to notify the Board's Regional Director that it would comply with the award, the General Counsel issued a complaint alleging that Local 190 had violated § 8(b)(4)(ii)(D) of the Act by threatening a labor disruption. *See Laborers' Local 104 v. NLRB*, 945 F.2d 55, 57 n. 1 (2d Cir.1991). On January 22, 1992, the Board issued an order finding that Local 190 had committed the unfair labor practice, and requiring Local 190 to cease and desist and to post remedial notices. *See Construction and General Laborers' Local Union No. 190*, 306 NLRB No. 25 (Jan. 21, 1992).

## II. Analysis

■ Local 190 contends that the Board did not have jurisdiction to conduct a 10(k) hearing because the Union did not have a work assignment dispute with Sweet. Rather, it says it had only a dispute over whether Sweet could subcontract work to ACMAT under the terms of the agreement between Sweet and Local 190. This circuit has not previously addressed the question whether a threat made to an employer in order to force compliance with a subcontracting agreement

may be the basis of a work assignment dispute within the jurisdiction of the NLRB. Our sister circuits are divided on the question. *Compare Hutter Constr. v. Operating Engineers, Local 139*, 862 F.2d 641 (7th Cir. 1988) (dispute not jurisdictional) with *Local 513 v. J.S. Alberici Constr. Co.*, 936 F.2d 390 (8th Cir.1991) (dispute jurisdictional, noting split with *Hutter*). We need not weigh into that conflict today, however. Local 190 clearly made threats to Sweet not only in order to enforce a subcontracting restriction but also in order to force ACMAT to reassign the disputed work to Local 190. Therefore, at least as to ACMAT, the dispute was not over the application of a subcontracting agreement but rather over the assignment of work.

Local 190 also argues that the dispute is not jurisdictional because it was provoked by ACMAT's transferring work from Local 190 to the Sheet Metal Workers. Except to the extent discussed below, this work transfer argument was not raised before the Board, and we will not consider it for the first time on appeal.

A more serious jurisdictional problem is presented by the Board's refusal to allow Local 190 to present evidence that ACMAT signed a CBA with the Sheet Metal Workers, and thus assigned the disputed work to them, because the Sheet Metal Workers' Pension Fund made an investment in ACMAT. Counsel for Local 190 attempted to present this evidence to the Board at the 10(k) hearing. In a footnote, the Board rejected Local 190's proffer as not relevant to the work assignment issue, but did not consider whether the evidence might be relevant to the Board's jurisdiction over the dispute.[1]

■ In this court Local 190 has argued that, if there is an illicit relationship between ACMAT and the Sheet Metal Workers Union, then the work assignment dispute is beyond the Board's jurisdiction. Thus Local 190 argues, in effect, that evidence of an illicit agreement is relevant to the jurisdictional question, not the work-assignment is-

---

1. For an example of a case where the pension fund's investment in ACMAT was found "not [to] taint the work assignment process" because the eligibility of the representative is irrelevant to the employees' entitlement to the work, see *Laborers' Local 104 v. NLRB*, 945 F.2d 55 (2d Cir.1991).

sue, and urges us to remand the matter on that basis. The Board appears to agree that if the evidence is relevant at all, it is relevant to the jurisdictional issue. We agree as well. If an employer is a signatory to an impermissible agreement to assign work for a reason unrelated to job performance, he does not face a "dispute not of his own making and in which he has no interest...." *ILWU Local 62-B v. NLRB,* 781 F.2d 919, 924 (D.C.Cir. 1986). Such a dispute is not within the Board's § 10(k) jurisdiction.

██ The Board claims, however, that the union waived this argument by failing to raise it before the Board. We are not persuaded. In their briefs and at oral argument, counsel for both the Union and the Board consistently confused the jurisdictional and work assignment inquiries. We think the same confusion infected the proceedings before the Board, which entertained the Union's challenges to the Board's jurisdiction and the 10(k) dispute over work assignment at a single hearing. Inasmuch as Local 190 did attempt to introduce evidence of an illicit agreement at that hearing, it would be unduly harsh, on this record, to hold that Local 190 has waived its objection to the Board's failure to consider its evidence at the threshold jurisdictional stage.

For the foregoing reason, we remand this matter for the Board to decide the relevance and, if relevant, the significance for the Board's jurisdiction, of Local 190's proffer concerning the Sheet Metal Workers Pension Fund's investment in ACMAT. Accordingly, we need not reach the merits of the 10(k) work assignment decision and the unfair labor practice determination that follows from it.

*So ordered.*