193 F.3d 539 (D.C. Cir. 1999)
 Associated Milk Producers, Inc.,Petitioner
v.
National Labor Relations Board, Respondent
 No. 98-1481
 United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued October 1, 1999
Decided October 22, 1999
 
 On Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board
 Patrick W. Jordan argued the cause for petitioner. With him on the briefs was Bradford K. Newman.
 Jill A. Griffin, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief was Frederick C. Havard, Supervisory Attorney, Linda Sher, Associate General Counsel, John D. Burgoyne, Acting Deputy Associate General Counsel.
 Before: Edwards, Chief Judge, Wald and Williams, Circuit Judges.
 Opinion for the Court Filed by Chief Judge Edwards.
 Edwards, Chief Judge:
 
 
 1
 The National Labor Relations Board ("Board") seeks to enforce an order directing Associated Milk Producers, Inc. ("Associated Milk") to bargain in good faith with the Chauffeurs, Teamsters and Helpers, Local Union No. 238 ("Union"). The Board found Associated Milk in violation of 8(a)(1) and (5) of the National Labor Relations Act ("NLRA") because Associated Milk refused to bargain with the Union after it had been certified. See 29 U.S.C. 158(a)(1) and (5) (1994). The Union had been certified after an election in which 23 votes were cast for the Union, 20 against, and challenges to 4 ballots were sustained. Associated Milk argues that the certification of the election was invalid, because challenges to three of the ballots should have been rejected. Associated Milk seeks to have this court accept the votes of the challenged employees, reverse the Board's certification of the election, and vacate the Board's order that Associated Milk bargain in good faith.
 
 
 2
 The Union challenged the votes of three employees who, it argued, were not a part of the stipulated bargaining unit. Prior to the election, the Union and Associated Milk agreed to a stipulated bargaining unit consisting of "employees ... employed by the Employer at its Arlington, Iowa facility."The Board's Regional Director determined that the stipulation is unambiguous, but he then went on to treat it as if it were ambiguous by conducting an ex parte "investigation" which led him to conclude that the three employees did not work at the Arlington facility. For the most part, the Regional Director's decision, affirmed by the Board, has no basis in a record. This is because his so-called investigation fell short of a hearing pursuant to which a record could have been established. In the absence of such a record, there is no basis upon which to uphold the judgment of the Board. Accordingly, we remand the case to the Board for a hearing to determine whether the challenged employees are part of the stipulated bargaining unit.
 
 
 3
 It is clear from the briefs and arguments in this case that the parties, and possibly the Board as well, are terribly confused over the meaning of this court's decision in Avecor, Inc. v. NLRB, 931 F.2d 924 (D.C. Cir. 1991), which we herein clarify. The point of confusion is over the Board's responsibility when it is faced with a stipulated bargaining unit that is ambiguous. As we explain below, in such a situation, the Board must seek to determine the parties' intent through normal methods of contract interpretation, including the examination of extrinsic evidence. Only when the stipulation is a nullity from which no intent can be discerned should the Board ignore the stipulated agreement and determine the bargaining unit on the basis of its community of interest test.
 
 I. Background
 
 4
 The facts surrounding the election and the stipulated bargaining agreement are un-controverted. After the Union petitioned to represent Associated Milk's employees, the Union and Associated Milk stipulated to a bargaining unit. The stipulation provides that the Union would represent
 
 
 5
 [a]ll full-time and regular part-time production and maintenance employees, including lead persons, operators,baggers, sanitation workers, truck mechanics, milk quality technicians, maintenance workers, local drivers, bulktruck drivers and waste water operator employed by the Employer at its Arlington, Iowa facility; excluding allover-the-road drivers, milk quality lab clerical employees, other clerical employees, salespersons, professional employees, guards and supervisors, as defined by the Na-tional Labor Relations Act, as amended.
 
 
 6
 Decision and Direction of Election, reprinted in Petitioner's Appendix ("P.A.") 18 (emphasis added). The Regional Director approved the stipulation, noting that it constitutes an appropriate unit for the purposes of collective bargaining within the meaning of 9(b) of the NLRA. See id.
 
 
 7
 During the representation election, the Union challenged the votes of three bulk truck drivers on the basis that those drivers were employed not at Associated Milk's Arlington, Iowa facility, but, instead, at Associated Milk's Fredericksburg facility. Associated Milk disagreed. The stipulation is clear that the bargaining unit includes only employees who work at the Arlington facility; it is unclear whether the three challenged drivers fit that description.
 
 
 8
 Bulk truck drivers are responsible for delivering whole milk from neighboring farms to Associated Milk's processing facilities. Associated Milk employs a number of bulk drivers, most of whom deliver all of their loads to the Arlington facility. The three challenged drivers, however, deliver three out of every four loads to Associated Milk's Fredericksburg facility. Only the fourth load is delivered to Associated Milk's Arlington facility. The Fredericksburg facility is, however, a part of the Arlington Division, which is based at the Arlington facility. As a result, in addition to making one out of four deliveries to Arlington, there are other factors to suggest the drivers are employed at the Arlington facility. For instance, the challenged drivers wash and maintain their trucks at the Arlington facility, they are supervised by someone at Arlington, and all of their personnel records are kept at Arlington.
 
 
 9
 Despite this ambiguity, the Regional Director found that the stipulation is unambiguous. He did not, however, treat it that way: He treated it like an ambiguous stipulation by conducting an ex parte investigation to determine whether, in fact, the challenged bulk drivers worked at the Arlington facility. Based on the evidence he gathered through the investigation, the Regional Director upheld the Union's challenges. See Supplemental Decision and Certification of Representative, reprinted in P.A. 26. Most of the evidence he gathered, however, is not in the record.
 
 
 10
 Associated Milk appealed the Regional Director's decision asking the Board either to reverse the Regional Director's findings on the challenged ballots or to remand for a hearing according to the Board's community of interest standard. Associated Milk's position was muddled. On the one hand, it argued that the drivers fall within the terms of the stipulation; on the other, it argued that the parties' intent was not clear and that the Board should determine the bargaining unit on the basis of the community of interest standard. In any case, Associated Milk disputed many of the Regional Director's findings.
 
 
 11
 Despite these factual disputes, and without much of a record to review, the Board denied Associated Milk's appeal. Soon thereafter, the Union attempted to bargain with Associated Milk. Associated Milk refused to bargain, choosing instead to precipitate an unfair labor practice charge so that it could seek review of the Board's decision. See Family Serv. Agency San Francisco v. NLRB, 163 F.3d 1369, 1373 n.2 (D.C. Cir. 1999) (noting that the proper path to seek review of a Board's certification of an election is to precipitate an unfair labor practice charge). The Union then filed a charge against Associated Milk and, based on that charge, the Regional Director filed a complaint alleging that Associated Milk's refusal to bargain with the Union was an unfair labor practice. The Board, on a motion for summary judgment, upheld the complaint and ordered Associated Milk to bargain in good faith with the Union. This appeal followed.
 
 II. Analysis
 
 12
 Under 10(e) and (f) of the NLRA, 29 U.S.C. 160(e), (f) (1994), this court will "reverse the Board if, upon reviewing the record as a whole, we conclude that the Board's findings are not supported by substantial evidence." Micro Pacific Dev. Inc. v. NLRB, 178 F.3d 1325, 1329 (D.C. Cir. 1999) (citation and internal quotation marks omitted). Substantial evidence "is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Associated Milk argues that the Board's order should be overturned because the stipulation unambiguously includes the three challenged drivers. In the alternative, Associated Milk argues that if the stipulation is ambiguous, the Board was required to ignore the stipulation and determine the status of the three drivers by employing its normal community of interest standard. As petitioners put it, "either the stipulation is unambiguous, and the Challenged Bulk Drivers ... are included, or the stipulation is ambiguous, and their inclusion had to be determined under a community of interest test." Petitioner's Opening Br. at 30.
 
 
 13
 The Company's position is not only wrong, but it reflects a fundamental misunderstanding of the law regarding ambiguous stipulations. Associated Milk is not alone in its confusion:The Board here seems to make the same mistake. It argues that the "parties here clearly and unambiguously defined the unit." Br. for the NLRB at 19. And it notes that its own precedent states that "if the unit description of that agreement is expressed in clear and unambiguous terms, the Board will not examine extrinsic evidence to determine the parties' intent regarding the bargaining unit composition." Id. (quoting Laidlaw Transit, Inc., 322 N.L.R.B. 895, 895 (1997)).Nonetheless, the Board then cites extrinsic evidence to support its interpretation of what it argues is an unambiguous stipulation. The Board's studious aversion to admitting that the stipulation is ambiguous suggests that it also believes that an ambiguous stipulation must be disregarded in favor of a community of interest inquiry. This belief is a misunderstanding of this court's holding in Avecor, Inc. v. NLRB, 931 F.2d 924 (D.C. Cir. 1991), which we will now clarify.
 
 
 14
 In Avecor, this court noted that when the Board creates a bargaining unit de novo, it "determines which employees share common interests such that they could fruitfully bargain in concert." 931 F.2d at 932. But, the court held,
 
 
 15
 [w]hen the parties stipulate the bargaining unit, ... the Board has a more limited role. First it must ensure that the stipulated terms do not conflict with fundamental labor principles. Having done so, its task is simply to enforce the agreement. If the terms of the stipulation are unambiguous, the Board must hold the parties to its text. If the terms are ambiguous, the Board may look to the usual factors governing the definition of an 'appropriate unit,' including the community-of-interest standard.
 
 
 16
 Id. Avecor did not mean, however, that any time a stipulation is ambiguous, the Board must ignore it and turn to the community of interest standard. In a stipulated unit case, the Board's primary responsibility is to discern the parties' intent. That responsibility does not fall away at the first hint of ambiguity. Rather, the Board should only turn to the community of interest test when it is unable to discern the parties' intent from the stipulation. In other words, the ambiguity to which Avecor refers is ambiguity about the parties' intent, not ambiguity in the stipulation itself.
 
 
 17
 When faced with a stipulated bargaining unit, the Board must first determine whether the stipulation is ambiguous. If it is not, then the Board must simply enforce the agreement. See id. If, however, the stipulation is ambiguous, then the Board must determine whether the parties' intent can nonetheless be discerned from the stipulation. If the stipulation is a nullity such that the parties' intent cannot be discerned, then the Board determines the bargaining unit by employing its normal community of interest standard. See id.; International Union of Elec., Radio and Mach. Workers v. NLRB, 418 F.2d 1191, 1201 (D.C. Cir. 1969) (noting that a de novo approach to determining the bargaining unit is appropriate when intent of parties cannot be discerned);Venture Indus., Inc., 327 N.L.R.B. No. 165 (Mar. 19, 1999) (noting that the Board will apply the community of interest test when the parties' intent is not clear).
 
 
 18
 If the parties' intent can be discerned, then the Board should interpret the ambiguous stipulation as one would interpret an ambiguous contract, including resort to extrinsic evidence. See International Union, 418 F.2d at 1201 (noting that when a stipulation is ambiguous, the Board properly turns to extrinsic evidence "in order to ascertain the intent of the parties"). Avecor did not articulate this approach, but it certainly did not reject it either. Moreover, some of our sister circuits have followed it for years. See NLRB v. Barker Steel Co., 800 F.2d 284, 286 (1st Cir. 1986) (noting that where a stipulation is ambiguous, "the Board has the authority to interpret the agreement according to what it finds to have been the intent of the parties") (citation and internal quotation marks omitted); NLRB v. Detective Intelligence Serv., 448 F.2d 1022, 1025 (9th Cir. 1971) ("[W]here a stipulation is ambiguous, the Board has the authority to interpret the agreement according to what it finds to have been the intent of the parties."); NLRB v. Joclin Mfg. Co., 314 F.2d 627, 634 (2d Cir. 1963) ("Certainly [if] the stipulation ... was ambiguous, evidence of practical construction would be of moment."). Indeed, the Board itself recognizes its ability to interpret ambiguous stipulations. See Gala Food Processing, Inc., 310 N.L.R.B. 1193, 1193 (1993) (noting that the Board has the authority to interpret ambiguous stipulations by resorting to extrinsic evidence as to parties' intent).
 
 
 19
 However, in interpreting an ambiguous stipulation, the Board must create a record. An appellate court can only uphold the Board's findings as to the meaning of an ambiguous stipulation if those findings are supported by substantial evidence, see Micro Pacific Dev. Inc., 178 F.3d at 1329, and there will only be evidence to support the Board's findings if a record is created. Thus, the Board must hold a hearing to examine extrinsic evidence of the parties' intent. Cf. International Union, 418 F.2d at 1201 (holding that when examining extrinsic evidence to discern parties' intent, the Board must examine evidence from both sides).
 
 
 20
 The Board's failure to create a record in this case requires us to remand. The stipulation in this case indicates that the bargaining unit is to include "bulk truck drivers ... employed by the Employer at its Arlington, Iowa facility." Decision and Direction of Election, reprinted in P.A. 18. This stipulation is ambiguous. It clearly expresses the parties' intent to include only those bulk truck drivers employed at the Arlington facility. However, there is ambiguity about whether the three challenged drivers fit that description. That ambiguity could not be resolved without reference to extrinsic evidence. The Regional Director knew that: He conducted an investigation to determine where the three challenged drivers worked. But he did not create a record. Thus, there is no substantial evidence to support his resolution of the ambiguity in the Union's favor. In other words, this court cannot know whether there was any evidence to support his finding that the three challenged drivers were not employed at the Arlington facility.
 
 III. Conclusion
 
 21
 For the reasons given above, enforcement of the Board's order is denied, the petition for review is granted, and the case is remanded to the Board for a hearing to determine whether the three challenged drivers belong in the bargaining unit.