**JOSEPH T. RYERSON & SON, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

International Brotherhood of Teamsters, AFL–CIO, Local 714 and United Steelworkers of America, AFL–CIO, Intervenors.

No. 99–1327.

United States Court of Appeals, District of Columbia Circuit.

Argued May 5, 2000.

Decided July 7, 2000.

---

Stephen D. Erf argued the cause for petitioner. With him on the briefs were Michael F. Rosenblum, Timothy S. Bishop and Jeffrey W. Sarles.

Sonya Spielberg, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were Leonard R. Page, General Counsel, Linda R. Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Peter Winkler, Supervisory Attorney.

David I. Goldman argued the cause for intervenors. With him on the brief was Susan Brannigan.

Before: SILBERMAN and ROGERS, Circuit Judges and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Joseph T. Ryerson & Sons, Inc. petitions for review of an order of the National Labor Relations Board that the company violated §§ 8(a)(1) and (5) of the National Labor Relations Act by refusing to bargain with the certified representative of the bargaining unit, namely with Local 714 of the International Brotherhood of Teamsters ("Teamsters") and the United Steelworkers of America ("Steelworkers"), which jointly petitioned to represent a bargaining unit at four of the company's plants in Chicago, Illinois. The company contends that the Board erred in failing to set aside the election for three reasons: (1) the Act does not authorize either joint election petitions or separate administration by two unions of a collective bargaining agreement; (2) there is not substantial evidence in the record to support the Board's finding that the unions did not misrepresent the intended nature of their joint representation to the bargaining unit employees during the election campaign; and (3) the hearing officer abused his discretion in denying the company's subpoena for the unions' entire joint bargaining agreement and other internal documents relating to the joint petitions for representation, thereby denying the company a full and fair hearing. Because the company failed to preserve its statutory argument for review by the court, and because we conclude that the company's other contentions are unpersuasive, we deny the petition and grant the Board's cross-application for enforcement of its order.

## I.

Joseph T. Ryerson & Sons, Inc. operates four plants in Chicago, Illinois—the 16th Street, 83rd Street, 103rd Street, and 111th Street—known collectively as the "Chicago Complex." After a number of unsuccessful attempts by the Steelworkers—due, in part, to lack of support at the 16th and 83rd Street plants—to organize Ryerson production and maintenance employees in Chicago, the Teamsters, in 1997, began a campaign to represent production and maintenance employees at the 16th and 83rd Street plants. After the Teamsters filed a petition with the Board seeking certification as the exclusive bargaining representative of the bargaining unit at the 16th and 83rd Street plants, a struggle between the Teamsters and Steelworkers ensued, resulting in the Steelworkers' campaign to represent the employees at the 103rd and 111th Street plants. After the petitions for representation of the 800 employees were consolidated for hearing, the Steelworkers distributed a flyer at the 103rd Street and 111th Street plants stating that:

> The workers at 103rd Street don't want to be represented by the Teamsters and have overwhelming[ly] signed Steelworker cards ... The Teamsters are arguing for one election including 83rd and 16th Street workers.... The Steelworkers are fighting to get an election for the 103rd Street workers.

Employees at the 16th and 83rd Street plants, without objection from the Team-

sters, circulated a petition opposing the Steelworkers: "We, the undersigned, **DO NOT** want the Steelworkers to represent us. Rather than have them, we will remain **NON-UNION**." (emphasis in original)

After failed attempts at mediation and on the eve of arbitration, the unions agreed to file a joint petition for certification. Following execution of a joint petition agreement, the unions distributed flyers to the employees that set out the first two paragraphs of the joint petition agreement:

> At the National Relations Board hearing, the [Steelworkers] and the [Teamsters] agree to engage in a joint organizing/representa[ ]tion campaign at the Chicago Complex of [the company] for a bargaining unit consisting of all four facilities, including 16th Street, 83rd Street, 103rd and 111th streets. This will involve an amended representation petition to seek a joint certification, unless otherwise agreed to by the [Teamsters] and [Steelworkers].
>
> Assuming that the campaign is successful, the union[s] will jointly negotiate for a collective bargaining agreement and will divide responsibility for administering the contract as follows:
>
> –16th and 83rd streets—[Teamsters]
>
> –103rd and 111th Streets—[Steelworkers]
>
> Dues and membership will follow the same lines.

No other portion of the joint petition agreement was divulged to the employees. The unions circulated separate authorization cards, and filed amended petitions to jointly petition to represent "[a]ll full-time and regular part-time production and maintenance employees" at the four Chicago Complex plants.

During the election campaign, the Steelworkers distributed literature and campaigned exclusively at 103rd and 111th Streets, while the Teamsters distributed literature and campaigned exclusively at 16th and 83rd Streets. Each union held its own rallies. Organizers from both unions made statements to employees that the unions would part ways with respect to representation after the certification, dividing the four plants between them for the election campaign and thereafter for contract administration.[1]

On September 25, 1997, the unions won the election.[2] The company filed objections to the election, noting among other things that the unions "stated [their] intention to negotiate as separate unions in separate bargaining units, and not as a joint bargaining representative" and "misrepresented how bargaining and contract administration would occur if [they] won the election." The company also served a subpoena on the unions for "[a]ll documents relating to the joint representation arrangement" between the Teamsters and the Steelworkers. The unions objected to the subpoena as seeking irrelevant documents and as vague and unduly burdensome. The hearing officer denied the subpoena except as to the first two paragraphs of the joint petition agreement that had been disclosed to the employees during the election campaign, on the ground that the unions' internal communications were irrelevant because they did not shed light on what the unions had communicated to the employees during the election campaign. Following a hearing over the course of several days, the hearing officer found "no direct evidence that the [unions] do not intend to bargain jointly," observing that the unions had "consistently maintained that they would

---

1. According to the Bureau of National Affairs, under the joint representation agreement, the Teamsters will represent 525 employees at two plants and the Steelworkers will represent 275 employees at the other two Chicago Complex plants. *See BNA Daily Labor Report,* Nov. 6, 1997, at A3.

2. Of the 820 employees eligible to vote in the election, 786 voted: 418 voted for the unions and 352 voted against the unions, with 16 ballots challenged and one declared void.

bargain jointly, but administer the jointly-negotiated contract separately at specific locations," and that there was no evidence "that the [unions] misrepresented how bargaining and contract administration would occur if [they] won the election." The Board adopted the hearing officer's findings and recommendations in the unions' favor, and certified the unions as the exclusive bargaining representative of the bargaining unit employees.

When the company subsequently refused to bargain, the unions filed an unfair labor practice charge. The Board, in response to the company's attack on the certification because of the unions' conduct during the election campaign, ruled that the . company could not relitigate issues litigated in the representation proceeding, and granted the General Counsel's motion for summary judgment on the complaint charging the company with violating §§ 8(a)(1) and (5) of the Act. *See Joseph T. Ryerson & Son, Inc.*, 328 NLRB No. 168, 1999 WL 607156 (August 6, 1999). The company petitions for review of the Board's unfair labor practice order, and the Board filed a cross-application for enforcement of its order.

## II.

In contending that the Board erred by failing to set aside the election, the company makes three challenges. We address each in turn.

■ **A. Statutory challenge.** The company contends that the National Labor Relations Act does not authorize the Board to certify more than one union as exclusive bargaining representative, or to divide a bargaining unit for purposes of contract administration.[3] Specifically, the company makes two statutory contentions. First, it maintains that the Board acted contrary to the Act, which authorizes a union to become the exclusive bargaining-unit representative only if it obtains the support of a majority of the bargaining unit employees, by certifying two unions, each of which garnered only minority support, as the "exclusive representative" for the company's single Chicago Complex bargaining unit. Second, the company maintains that, even if the Act did permit joint petitioning and representation, it does not permit the unions to divide up a bargaining unit for purposes of bargaining, contract administration, and representation. As explained in its brief, in the company's view, the Board's authorization for the unions to divide up the Chicago Complex bargaining unit and administer the contract separately rests on "a false dichotomy between contract bargaining and contract administration" inasmuch as contract administration, and in particular the processing of grievances, is "inextricably linked with collective bargaining." While the second statutory contention poses a serious legal issue that the court has not yet addressed, *see supra* note 3, a threshold issue is whether these contentions are properly before the court. The Board maintains that the company "waived" its statutory contentions by failing to raise them in the representation proceeding before the Board and

---

**3.** While acknowledging that the court rejected a challenge to joint petitioning in *NLRB v. National Truck Rental Co.*, 239 F.2d 422 (D.C.Cir.1956), the company maintains that the issue should be revisited because the court's rationale is "obsolete and legally invalid." To support its contention that the Board exceeded its authority under the National Labor Relations Act, the company cites cases for the propositions that (1) an exclusive collective bargaining agent must enjoy the support of the majority of employees in the unit, *see, e.g., Carothers v. Presser*, 818 F.2d 926, 934 (D.C.Cir.1987); *Human Dev. Ass'n v. NLRB*, 937 F.2d 657, 665 (D.C.Cir.1991), and

(2) contract bargaining and contract administration are linked, such that allowing separate administration would violate the Act. *See, e.g., Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 77, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 581, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The Board, in turn, cites *National Truck Rental* as to joint representation, and cites several Board decisions for the proposition that a bargaining unit may be divided by unions for purposes of contract administration, *Utility Servs., Inc.*, 158 NLRB 592, 593 (1966); *Swift & Co.*, 114 NLRB 159, 160 (1955).

waiting until its opposition to the General Counsel's motion for summary judgment on the unfair labor practice complaint to raise the issues for the first time.

■ "It is well established that in the absence of newly discovered evidence or other special circumstances requiring reexamination of the decision in the representation proceeding, a respondent is not entitled to relitigate in a subsequent refusal-to-bargain proceeding representation issues that were or could have been litigated in the prior representation proceeding." *Thomas-Davis Med. Ctrs., P.C. v. NLRB*, 157 F.3d 909, 912 (D.C.Cir.1998) (quoting *Westwood One Broad. Servs., Inc.*, 323 N.L.R.B. No. 175, 1997 WL 331860 (June 16, 1997) (citing *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941))). The company, seeming to acknowledge the need to have raised its statutory argument in the representation proceeding, attempts to demonstrate that it did by pointing to various pages in the record. The assertion that it raised the statutory challenge in that proceeding is not borne out by the record. Neither the company's citations to the record nor counsel's response at oral argument demonstrates that the company made its statutory argument during the representation proceeding.

Apparently aware of the weakness of its position, the company falls back on its assertion that its statutory challenge was "implicit" in its argument that the unions' conduct demonstrated that they intended to divide the bargaining unit for separate representation. But the thrust of the company's reliance on the unions' conduct was to show that the joint representation agreement was a sham and the bargaining unit employees were confused about what they were voting for in the election, which is unrelated to the statutory challenge it raised in opposing summary judgment. Furthermore, as the Board stated in granting summary judgment on the unfair labor practice charge, the company did not "offer to adduce at a hearing any newly discovered and previously unavailable evidence, nor [did] it allege any special circumstances that would require the Board to reexamine the decision made in the representation proceeding." *Ryerson*, 328 NLRB No. 168, at 1. In any event, an implicit argument is hardly the same as giving notice so the Board has an opportunity to rule on the argument. *Cf. Alois Box Co. v. NLRB*, 216 F.3d 69, 77 (D.C.Cir. 2000). Indeed, the record suggests that rather than being an implicit argument in the company's arsenal attacking the election, the statutory challenge was an afterthought, interposed as a new argument aimed at avoiding summary judgment. This is evident from the fact that the company did not file an exception to the certification decision on statutory grounds much less thereafter raise a statutory challenge in its answer to the unfair labor practice charge.

The company's explanation that it was unable to litigate its statutory objections "with all of the information it needed" as a result of the denial of its subpoena for the entire joint representation agreement rings hollow. Even if access to the entire agreement might possibly have strengthened a statutory challenge, *cf. Construction & Gen. Laborers' Local Union No. 190 v. NLRB*, 998 F.2d 1064, 1066–67 (D.C.Cir.1993), the lack of such access did not preclude the company from raising the statutory challenge, particularly as it was suggested by the evidence on which the company relies to show that the unions did not intend to bargain jointly or to administer the parties' contract jointly. *See infra* Part II(B). Had the company made a statutory challenge during the representation proceeding, moreover, it might well have had a better argument in favor of enforcing the subpoena. *See infra* Part III(C).

■ The company's current contention that the Board failed in its responsibility to ensure that "fundamental labor principles" are not violated, *see Associated Milk Producers, Inc. v. NLRB*, 193 F.3d 539, 543 (D.C.Cir.1999), misses the mark.

Although it is not entirely clear, the company appears to be contending that the Board's responsibility to protect fundamental principles of labor law constitutes a "special circumstance" as would excuse the company's failure to raise its statutory argument during the representation proceeding. Were that the case, the Board's non-relitigation rule would be seriously compromised, eviscerating the non-relitigation rule for legal arguments having to do with the Board's authority under the Act. On the other hand, to the extent the company is suggesting that it is foreclosed from obtaining relief if its suspicions about how the unions will conduct themselves are confirmed, it is in error. Were the unions, for example, not to engage jointly in the collective bargaining process or not to engage in joint contract administration by taking divergent grievance and arbitration positions, *cf. International Bhd. of Teamsters v. NLRB*, 587 F.2d 1176, 1181 (D.C.Cir.1978), the company would not be without a remedy. The Board acknowledged in the certification order that the company could then file a petition to modify or revoke the unions certification, or file a refusal to bargain charge, or, as the Board acknowledged at oral argument, the company could simply refuse to bargain with an inappropriate unit. *See Utility Servs.*, 158 N.L.R.B. 592, 593, 1966 WL 17950 (1966).

Because the company did not preserve its right to raise its statutory contentions in appealing the Board's unfair labor practice order, those contentions are not properly before the court and we do not address them.

**B. Misrepresentation challenge.** Seeking to overturn the election on other grounds, the company contends that the Board's finding that the unions did not misrepresent to the bargaining unit employees during the election campaign the character of their proposed joint representation is unsupported by substantial evidence in the record. Because the unions engaged in misrepresentation, the company maintains, the Board erred in failing to set aside the result of the tainted election.

The company relies on evidence in the record that certain individuals told bargaining unit employees that the Steelworkers and Teamsters intended to bargain separately and that this message was reinforced by the separate campaigns waged by the unions. Specifically, the company relies upon statements attributed to union officials such as "don't worry about the Teamsters, we're gonna be Steelworkers here," and the "Teamsters [are] going to be at 16th and 83rd and we are not worried about what the Steelworkers are going to do."

Obviously, the members of the bargaining unit must have accurate information to inform their election decisions. *See, e.g., General Teamsters Local Union No. 174 v. NLRB*, 723 F.2d 966, 972 (D.C.Cir.1983); *Automatic Heating & Serv. Co.*, 194 N.L.R.B. 1065 (1972); *Suburban Newspaper Pubs., Inc.*, 230 N.L.R.B. 1215, 1217, 1977 WL 8924 (1977). However, the problem for the company's position is two-fold.

First, the Board's rejection of the company's contention is well founded. The court must affirm the Board's decision if it reasonably rests on factual findings supported by substantial evidence. *See Family Serv. Agency San Francisco v. NLRB*, 163 F.3d 1369, 1377 (D.C.Cir.1999); *Amalgamated Clothing & Textile Workers Union v. NLRB*, 736 F.2d 1559, 1562–63 (D.C.Cir.1984). The Board's finding that there were no misrepresentations by the unions during the election campaign rests on two grounds. First, the testimony of union supporters and officials was clear about the unions' intention to bargain jointly. Thus, Denise Williams, a Steelworkers organizer, testified that she informed bargaining unit employees that the unions would bargain jointly. Likewise, Gerald Jagodzinski, an organizer for Teamsters Local 714, testified that he never told employees that the unions would bargain separately. The Board also points to statements made by Jagodzinski to a reporter that "the two unions plan to negotiate a collective bargaining agreement"

once they were certified. Second, the evidence showed that management from the company distributed fliers during the election campaign informing employees that the unions would bargain jointly, and that no fewer than seven managers spoke directly to employees telling them they would be voting for both unions. Viewed together, these grounds establish substantial evidence to support the Board's finding that the members of the bargaining unit had accurate data to inform their election choices.[4]

■ Second, the evidence the company cites is insufficient to rebut even the prima facie showing. *See, e.g., Gene Fiedler Chevrolet Co.*, 245 N.L.R.B. 1075, 1076 n. 3, 1979 WL 10039 (1979); *Utility Servs., Inc.*, 158 N.L.R.B. 592, 592 (1966); *Florida Tile Indus., Inc.*, 130 N.L.R.B. 897, 897, 1961 WL 15516 (1961). The statements on which the company relies are consistent with the interpretation that contract administration would be handled at the separate plants while joint bargaining would occur in a joint fashion. Administration without deviation at the separate plants clearly would not be inconsistent with joint representation. Further, a number of the allegedly misleading statements that the company claims were made by the unions were in fact made by employees in the bargaining unit—John Jeziorski, James Malizio, Ron Butler, John Grey, Jesus Gomez, Mike Ross—not union officials. Because the Board reasonably found that the company did not show that these employees were acting as agents of the unions when these statements were made, it was justified in not attributing the statements to the unions. *See, e.g., Overnite Transp. Co. v. NLRB*, 140 F.3d 259, 266 (D.C.Cir. 1998); *Amalgamated Clothing*, 736 F.2d at 1565.

Thus, absent evidence that could rebut the substantial evidence on which the Board relied in finding that the unions did not misrepresent their intent to bargain jointly, the company fails to show that the Board erred in refusing to set aside the election for the alleged misrepresentation.

■ **C. Subpoena challenge.** Finally, the company contends that it was denied a full and fair hearing because the hearing officer denied the company's subpoena for the unions' entire joint representation agreement and other internal union communications about jointly representing the bargaining unit. The company maintains that the entire agreement was "highly relevant" and "central" to its argument that the unions did not intend to bargain jointly and the joint representation agreement was a sham. Reviewing the hearing officer's partial denial of the company's subpoena for abuse of discretion, we find none in view of the nature of the arguments that the company presented during the representation proceeding. *See Perdue Farms, Inc., Cookin' Good v. NLRB*, 144 F.3d 830, 834 (D.C.Cir.1998).

The hearing officer partially denied the subpoena on the ground that he found relevant only "whatever communications have been made to employees regarding the status of the joint petitioners," observing that the company "will have the right to file an unfair labor practice charge" if the unions do not bargain jointly. Given the nature of the company's challenge to the union election in the representation proceeding, that the unions made misrepresentations to the bargaining unit employees during the campaign, and given the historical antagonism that the company identified between the two unions, the company's position that it was deprived of information relevant to its reasonable sus-

---

4. The cases on which the company relies are readily distinguishable. In *Suburban Newspaper Publications, Inc.*, 230 N.L.R.B. 1215, 1217, 1977 WL 8924 (1977), the Board nullified an election because "the employees were told [by the unions and their representatives] there would be separate units represented by the respective labor organizations, not merely serviced by them." *Id.* at 1217 n. 5. Likewise, in *Automatic Heating & Service Co.*, 194 N.L.R.B. 1065, 1972 WL 24744 (1972), union officials admitted at the hearing that they had no intention of jointly bargaining or representing all the bargaining unit employees.

picion is plausible, *see Suburban Newspaper*, 230 N.L.R.B. at 1216, and the denial of the subpoena is thus troubling. Placing a barrier in the way of a party's ability to present its case would, if prejudicial, be grounds for reversing the Board. *Cf. Drukker Communications, Inc. v. NLRB*, 700 F.2d 727, 731, 734, (D.C.Cir.1983); *Indiana Hosp., Inc. v. NLRB*, 10 F.3d 151, 154 (3d Cir.1993).

Nevertheless, under the abuse of discretion standard, we conclude that it was still reasonable for the hearing officer to find that the full joint petition agreement and like internal communications had little relevance to the misrepresentation issue. *See NLRB v. Blackstone Mfg. Co.*, 123 F.2d 633, 635 (2d Cir.1941); *cf. Carothers v. Presser*, 818 F.2d 926, 934 (D.C.Cir. 1987) (observing that viewing Labor Management Reporting and Disclosure Act as creating a substantive "right of access" to a union's mailing list could subvert union's legitimate role as bargaining representative). Because the company has not shown that it was prejudiced by the Board's denial of the subpoena inasmuch as it is not without a remedy if the unions fail to bargain jointly, *see supra* Part III(A), when a subpoena of the entire agreement would no longer be premature and would arguably be enforceable, we conclude that the reasons given by the hearing officer for partially denying the subpoena fall within the alternatives available to him in the exercise of reasoned discretion. *See generally Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1497 (D.C.Cir. 1995).

Accordingly, because the company failed to preserve its statutory challenge to the certification of the unions as the exclusive representative for the bargaining unit, and because the company's other contentions are unpersuasive, we deny the petition for review and grant the Board's cross application for enforcement of its order.