PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

TELEDYNE ECONOMIC DEVELOPMENT,
Petitioner,

v.                                                    No. 96-1630

NATIONAL LABOR RELATIONS BOARD,
Respondent.

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

v.                                                    No. 96-1790

TELEDYNE ECONOMIC DEVELOPMENT,
Respondent.

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board.
(6-CA-27849, 6-RC-11227, 6-RC-11230)

Argued: January 29, 1997

Decided: March 6, 1997

Before WILKINSON, Chief Judge, ERVIN, Circuit Judge, and
HILTON, United States District Judge for the Eastern District of
Virginia, sitting by designation.

_____

Enforced by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Ervin and Judge Hilton joined.

_____

**COUNSEL**

**ARGUED:** Robert B. Cottington, REED, SMITH, SHAW &
MCCLAY, Pittsburgh, Pennsylvania, for Teledyne. Richard A.
Cohen, NATIONAL LABOR RELATIONS BOARD, Washington,
D.C., for NLRB. **ON BRIEF:** Peter D. Post, REED, SMITH, SHAW
& MCCLAY, Pittsburgh, Pennsylvania, for Teledyne. Frederick L.
Feinstein, General Counsel, Linda Sher, Associate General Counsel,
Aileen A. Armstrong, Deputy Associate General Counsel, NATION-
AL LABOR RELATIONS BOARD, Washington, D.C., for NLRB.

_____

**OPINION**

WILKINSON, Chief Judge:

This case presents the question of whether the National Labor
Relations Board may assert jurisdiction over a private employer
whose relationship with its employees is the subject of extensive reg-
ulation through a government contract. Teledyne Economic Develop-
ment challenges an NLRB order requiring Teledyne to bargain with
a union representing two groups of Teledyne employees at a Job
Corps Center. Teledyne argues that the extensive control exercised by
the Department of Labor over the terms and conditions of employ-
ment at the Center prohibits the Board from exercising jurisdiction
over Teledyne in this case. The plain language of the Act, however,
grants the Board the discretion to assert jurisdiction. See 29 U.S.C.
§§ 152(2) & 164(c)(1). Accordingly, we enforce the order of the
Board in this case.

I.

Teledyne Economic Development ("Teledyne") operates a Job
Corps Center in Pittsburgh, Pennsylvania pursuant to a contract with
the United States Department of Labor ("DOL"). The Center's statu-
tory purpose is to train severely disadvantaged youths between the
ages of 16 and 24 in order to provide them with the skills to find
meaningful employment.

2

Teledyne has operated the Center since its opening in 1971 under a series of competitively bid contracts with the DOL. Under the most recent contract, Teledyne may not increase reimbursable line-item expenses by more than three percent per year. That limit applies to aggregate employee salaries and wages. Additionally, Teledyne may not increase any individual employee's wages by more than 9.9 percent in any year. Within these limits, Teledyne is free to act without DOL approval or input. However, if Teledyne exceeds these limits without DOL approval, it will not be reimbursed. Although Teledyne constructed its own fringe benefits package, the benefit costs had to be approved by the DOL for Teledyne to be reimbursed. In addition, personnel policies must be approved by the DOL, and, once approved, cannot be changed without further DOL approval. Teledyne must also submit any new personnel policies or procedures to the DOL for approval before they may be implemented.

On August 7, 1995, the Service Personnel and Employees of the Dairy Industry, Teamsters Local Union No. 205 ("the Union") filed a petition with the NLRB's Pittsburgh Regional Office seeking to represent the instructors and counselors employed by Teledyne at the Center. On August 18, 1995, the Union filed a second petition seeking to represent the Center's licensed practical nurses. Teledyne argued that the Board could not assert jurisdiction over Teledyne's operations because the DOL exercised extensive control over personnel and labor relations matters.

The Board's Regional Director issued a Decision and Direction of Election in which he rejected Teledyne's argument, noting that it was no longer the Board's policy to decline the exercise of its statutory jurisdiction based on the considerations raised by Teledyne. Teledyne requested an appeal, which the Board denied on October 5, 1995.

Elections took place among the employees in each of the two units on October 6, 1995. A majority of each unit's employees cast ballots in favor of union representation. Accordingly, the Board certified the Union as the exclusive collective-bargaining representative of Teledyne's instructors and counselors and its licensed practical nurses.

Following the certifications, Teledyne refused the Union's requests for recognition and bargaining. The Union filed an unfair labor prac-

3

tice charge, and the Board's General Counsel issued a complaint, alleging that Teledyne's refusals to bargain violated sections 8(a)(5) and (1) of the National Labor Relations Act, 28 U.S.C. § 158(a)(5) and (1). Teledyne disputed the validity of the underlying union certifications. The Board issued an order requiring Teledyne to cease and desist from refusing to bargain with the Union. Teledyne filed a petition for review to this court, and the Board filed a cross-application for enforcement.

II.

Teledyne asserts that it is exempt from coverage by section 2(2) of the National Labor Relations Act. That section exempts from the Act's provisions "the United States or any wholly owned Government corporation, . . . or any State or political subdivisions thereof." 29 U.S.C. § 152(2). Prior to 1995, the Board had extended this exemption to private employers providing services for exempt governmental entities where the exempt entity exercised effective control of the primary terms of employment. See Res Care, Inc., 280 NLRB 670 (1986).

In Management Training Corp., 317 NLRB 1355 (1995), the Board declared it would no longer apply the Res Care governmental control test. The Board explained that instead, when election petitions involving private employers who were arguably controlled by exempt entities were filed, it would exercise its statutory jurisdiction to the fullest extent possible. Accordingly, it would thereafter"only consider whether the employer meets the definition of `employer' under Section 2(2) of the Act and whether such employer meets the applicable monetary jurisdictional standards." Id. at 1358-59. Teledyne possesses the authority to hire, fire, direct, and discipline its employees in accordance with its formulated policies. As a statutory employer, see 29 U.S.C. § 152(2), Teledyne fell within the Board's jurisdiction under the Management Training rule.

A.

Teledyne first contends that the Board is bound by section 2(2) of the NLRA to extend the governmental exemption to private employers where an exempt governmental entity effectively controls the

4

basic terms of employment. We reserved this issue in ARA Services, Inc. v. NLRB, 71 F.3d 129, 136 (4th Cir. 1995), noting that "there exists a question as to the [Management Training rule's] statutory validity."**1** We now resolve that question, holding that the Management Training rule is a valid exercise of the Board's discretion under the plain language of the NLRA.

We begin our review with the actual language of the exemption in section 2(2) of the NLRA. If a statute's meaning is plain, courts and agencies "must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 843 (1984). Section 2(2) of the NLRA exempts from its coverage, and from the Board's jurisdiction, "the United States or any wholly owned Government corporation, . . . or any State or political subdivisions thereof." 29 U.S.C. § 152(2).

There is nothing ambiguous about this language. By its terms, section 2(2) exempts only government entities or wholly owned government corporations from its coverage -- not private entities acting as contractors for the government. When enacting section 2(2), Congress was surely aware that private employers contracted with government entities to provide needed goods and services. Congress could not have intended to compel the Board to decline jurisdiction over private employers based upon constraints that their government contracts might impose upon the collective bargaining process. If it had so intended, it would have exempted private contractors as well as governmental entities from the Act.

Congress permitted the Board to exercise broad discretion in deciding whether to exercise its statutory jurisdiction. Section 14(c)(1) of the NLRA provides that the Board, in its discretion, may decline to assert jurisdiction over "any class or category of employers, where, in the opinion of the Board, the effect . . . on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction." 29 U.S.C. § 164(c)(1). Where, as in this case, the Board chooses to assert

_____

**1** In ARA Services, we did not address the statutory validity of the Management Training rule. We held, however, that"the retroactive application of the Management Training rule would be manifestly unjust." ARA Services, 71 F.3d at 135.

5

its jurisdiction rather than recognizing an exemption not compelled by section 2(2), the Board is within its authority. **2**

Other courts have recognized that the Res Care governmental control test which the Board applied prior to the adoption of Management Training was an exercise of the Board's discretion. In NLRB v. Kemmerer Village, Inc., 907 F.2d 661, 663 (7th Cir. 1990), the Seventh Circuit noted that the Res Care control test was "a reasonable systematization of the Board's inherent discretion to allocate its limited resources efficiently." Furthermore, Kemmerer emphasized that the Res Care rule was not "a rule of law" but rather was a "discretionary doctrine." Id. at 664; see also Human Development Assoc. v. NLRB, 937 F.2d 657, 660 (D.C. Cir. 1991). But see Board of Trustees of Memorial Hospital v. NLRB, 624 F.2d 177, 185 (10th Cir. 1980); NLRB v. Pope Maintenance Corp., 573 F.2d 898, 902 (5th Cir. 1978).

So too is the Management Training statutory employer rule a discretionary doctrine. There is nothing to prevent the Board from returning to the Res Care rule, or any other rule which is a rational exercise of the Board's discretion under the NLRA. We merely hold that the Management Training rule is a permissible exercise of the Board's jurisdiction under the plain language of the NLRA -- not that the rule is required by the terms of that statute.

Teledyne's argument that it should share the DOL's exemption from the NLRA's coverage because Teledyne acts as a"joint employer" with the DOL must also fail. The Management Training rule expressly disavowed consideration of the degree of control an

_____

**2** Teledyne relies on NLRB v. E.C. Atkins & Co., 331 U.S. 398 (1947), for the proposition that the degree of control exercised by an exempt entity over the terms and conditions of employment of a non-exempt entity's employees limits the Board's jurisdiction. The Supreme Court, however, prescribed no such strict rule, but rather emphasized that the Board has considerable discretion in deciding whether to exercise jurisdiction over non-exempt private entities. Id . at 403. Indeed, the Court went on to hold that the employer in that case was obligated to bargain with the union despite the fact that the military reserved the right to veto the hiring or firing of the plant guards represented by the union. Id. at 407.

exempt entity exerts over the employment relations of a private entity. The cases upon which Teledyne relies for its proposed "joint employer" doctrine are merely applications of the Board's then-operative governmental control test. See, e.g., Lutheran Welfare Services v. NLRB, 607 F.2d 777, 778 (7th Cir. 1979). We have already found the Board's decision to abandon the control test valid under the plain language of the NLRA. Therefore, under Management Training, Teledyne's joint-employer argument has lost whatever relevance it may once have had.

B.

Teledyne further contends that even if the Management Training rule fits within the language of the NLRA, we should strike down the rule because it is inconsistent with the policies behind the NLRA. Teledyne maintains that the Management Training rule violates the purposes of collective bargaining because the omnipresent possibility of a DOL veto forecloses "effective" bargaining over the terms and conditions of employment. Teledyne argues that, due to the DOL's veto power, it could function only as a middleman between the Union and the DOL. Furthermore, Teledyne raises the possibility that the Union might call a strike if the DOL refused to approve its contract demands. In such a situation, Teledyne argues it would be unable to end the strike because it lacks the authority to institute changes to the terms and conditions of employment without DOL approval. Lastly, Teledyne asserts that union contract demands might lead to the termination of Teledyne's contract with the DOL if the DOL is unwilling to accept the Union's demands when the contract comes up for renewal.

The Board responds with its own salvo of policy arguments in support of the Management Training rule. First, the Board argues that if it declined to exercise jurisdiction over employers like Teledyne, it would be consigning the employees of such employers to a no-man's land where they would not be covered by any labor relations statute. Second, the Board disputes Teledyne's claim that it will be unable to engage in "meaningful" bargaining. The Board contends that Teledyne's claim is speculative because it has yet to attempt bargaining; that Teledyne could bargain effectively simply by notifying the Union of the possibility of a DOL veto; and that Teledyne could readily

7

implement agreed-upon terms which the DOL did not disapprove. Third, the Board argues that Management Training represents a bright line rule which is more easily applied than the case-by-case approach of the Res Care governmental control test. Lastly, the Board dismisses as meritless Teledyne's argument that union demands might cause Teledyne to lose its contract with the DOL. The Board argues that Teledyne is situated no differently than the thousands of private employers who have to take account of the economic pressures of collective bargaining.

In the end, these arguments do not indicate that the Board's Management Training rule is irrational or inconsistent with the NLRA. They merely demonstrate that there are policy arguments on both sides of the issue. It is not for the courts, however, to use such arguments to amend Congress' clear statutory mandate from the bench. Whatever reservations we might have about the Management Training rule, Congress has left this particular judgment to the Board's discretion. And, as the Supreme Court has made clear, we are not to "substitute our judgment for those of the Board with respect to the issues Congress intended the Board to resolve." Charles D. Bonnano Linen Services v. NLRB, 454 U.S. 404, 418 (1982).

If Teledyne wishes to press for the amendment of section 2(2), it must present its case to Congress. If it fails in that forum, Teledyne must persuade the Board to decline to exercise its jurisdiction under section 14(c)(1) of the NLRA. This court, however, is charged with interpreting statutes, not rewriting them. If we were to adopt Teledyne's position, we would be adding to the exemption in section 2(2) entities which Congress did not place there. The petition for review must therefore be denied and the order of the Board enforced.

ENFORCED

8