Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 10, 2007            Decided January 25, 2008

No. 07-1032

PACE UNIVERSITY,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with
No. 07-1054

———

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board

———

*Terence M. O'Neil* argued the cause for petitioner.  On the briefs was *Raymond J. Pascucci.*

*Elizabeth A. Heaney*, Attorney, National Labor Relations Board, argued the cause for respondent.  With her on the brief

2

were *Ronald E. Meisburg*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Assistant General Counsel, and *Fred B. Jacob*, Supervisory Attorney.

Before: ROGERS, TATEL and KAVANAUGH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The petition for review filed by Pace University seeks to have the court hold that the National Labor Relations Board abused its discretion in applying its non-relitigation rule. Under that rule the Board has determined that only in limited circumstances will a party be permitted to reopen a representation issue during an unfair labor practice proceeding. Pace maintains that it did not raise an issue regarding the scope of the bargaining unit during the representation proceeding because it thought it had prevailed on the issue and only realized there was disagreement during collective bargaining negotiations with the duly elected Board-certified union. In applying the non-relitigation rule, however, the Board pointed to the record in the representation proceeding where Pace was repeatedly asked to state its position on the issue and declined to explain the nature of its concern, instead urging that its motion to dismiss the union's certification petition be granted due to prejudicial timing.

In view of the Board's reasonable determination of how it will conduct its proceedings, there was no abuse of discretion by the Board. The Board's refusal to adopt an exception for claimed reliance upon a mistake of fact illustrates the principle behind the rule: On an issue of central importance in the representation proceeding, a party having reason, ability, and opportunity must make its position a matter of record. Otherwise, the rationale for the rule – the importance of the finality of Board-certified elections and avoidance of delay in

enforcing their results – is compromised. Accordingly, we deny the petition for review of the Board's order that Pace unlawfully refused to bargain with the certified union representative and grant the Board's cross-application for enforcement of its order.

## I.

The relevant facts are undisputed. In December 2003, the New York State United Teachers ("Union") petitioned the Board for certification as the representative of adjunct and part-time faculty members ("adjuncts") at Pace University, a private, nonprofit institution of higher education. The number of adjuncts varies during the calendar year, ranging from approximately 109 employed by Pace in the summer semester to 750 during the spring semester of the 2003-04 academic year, for example; they are employed by the semester, but are frequently reappointed and receive increased promotional, salary, and other benefits according to years of service. Pace filed a motion to dismiss the Union's petition on the ground that it was filed at a prejudicial time in the academic year when few adjuncts were employed. Then, after a hearing in January 2004, Pace objected that the petitioned-for unit was unsupported by the evidence.

In response to Pace's objection, the Regional Hearing Officer reopened the record and held a multi-day hearing in February 2004. During this hearing Pace did not contest the inclusion in the bargaining unit of adjuncts whom it subsequently sought, during the unfair labor practice proceeding, to exclude from the certified unit. The Regional Director denied Pace's motion to dismiss and issued an Election Order defining the scope of the bargaining unit and the voter-

eligibility criteria.[1]  The Board denied Pace's request for review of the Election Order on the ground that the petition raised "no substantial issues warranting review" and finding without merit Pace's claims of bias of the Regional Director and Hearing Officer.  At this point, Pace had raised no objection regarding the adjuncts whom it sought to have excluded during the unfair labor practice proceeding.

In response to Pace's letter seeking clarification of two footnotes in the Regional Director's Election Order regarding

---

[1]  The Election Order read:

> Included [in the bargaining unit]:  All adjunct faculty members, part-time instructors and all non-supervisory employees who have dual capacity functions who are employed by the Employer. [*]
>
>> [*] Eligible to vote in the election are those in the unit . . . who have received appointments and teach at least 3 credit hours and/or 45 hours in one semester in at least two of the last three academic years, including the current academic year.
>
> Excluded: All other employees, including adjunct faculty and part-time instructors employed in the School of Law, all full-time faculty, casual employees,[*] independent contractors, guards and supervisors within the meaning of the Act.
>
>> [*] Casual employees ineligible to vote are those employed for less than 3 credit hours and/or 45 hours in a semester.

which adjuncts would be eligible to vote at the election, the Regional Director issued an Amended Election Order, which read, in relevant part:

> Included [in the bargaining unit]: All adjunct faculty members, part-time instructors, and all adjunct faculty members and part-time instructors who work in a non-supervisory dual capacity for the Employer, employed by the Employer. [*]

>> [*] Eligible to vote in the election are those in this unit who have received appointments and teach or have taught at least 3 credit hours and/or 45 hours in any semester in any of two academic years during the three-year period commencing with the 2001-2002 academic year and ending with the 2003-2004 academic year.

> Excluded: All other employees, including adjunct faculty and part-time instructors employed in the School of Law, all full-time faculty, casual employees, independent contractors, guards and supervisors within the meaning of the Act.

Pace did not seek Board review of the Amended Election Order.[2]

---

[2] Although the Union's initially proposed unit did not mention "casual employees," both the Election Order and Amended Election Order did. The Election Order included a footnote stating that "casual employees" were ineligible to vote; it defined "casual employees" as "those employed for less than 3 credit hours and/or 45 hours in a semester." This reflected the definition adopted by the Hearing Officer in response to the Union's amended definition of the unit. The Amended Election Order, in referencing the definition in the Election Order, stated that "casual employees" were "those adjunct faculty and those part-time instructors who work less than 3 credit

The Union won the election and in May 2004 the Board certified it as the representative of the adjuncts' bargaining unit. Negotiations on a collective bargaining agreement between Pace and the Union commenced. A dispute arose in October 2004 about whether the bargaining unit included only those adjuncts eligible to vote. *See supra* note 2. In February 2006, the Union filed a petition for unit clarification. In response, the Regional Director stated that the unit included all adjuncts who teach at least 3 credit hours and/or 45 hours in one semester, regardless of their eligibility to vote. The Board denied Pace's petition for review on the ground that it raised "no substantial issues warranting review" regarding clarification of the unit. Two Members of the Board noted that, although this was not the case to do so because the parties had not litigated the definition of "casual employee" and Pace had not previously challenged the scope of the unit with respect to adjuncts, the Board should reconcile its decisions on whether unit inclusion and voter eligibility must be coextensive.

When Pace refused to resume collective bargaining negotiations, the Board's general counsel filed a complaint based on the Union's unfair labor practice charge, and moved for summary judgment. In defense, Pace argued that the Board's unit determination was invalid because it included adjuncts who were "casual employees" and ineligible to vote in the election. The Board, pursuant to its non-relitigation rule, refused to address the issue, observing that "[a]ll representation issues raised by [Pace] were or could have been litigated in the prior representation proceedings." *Pace Univ.*, 349 NLRB No.

hours and/or 45 hours in a semester *or otherwise fail to meet the eligibility formula set forth above*." According to the Board, the new (italicized) text was an "inadvertent" typographical error. Resp.'s Br. at 20. In defining the unit and voter-eligibility criteria, the Amended Election Order did not include a footnote on "casual employees."

10, Case 2-CA-37884, 2007 WL 185973, at *1 (Jan. 22, 2007) ("2007 Order"). The Board found that Pace's refusal to bargain violated §§ 8(a)(1) and (5) of the National Labor Relations Act ("the Act"), and issued a cease and desist order directing Pace to bargain upon the Union's request. Pace petitions for review.

## II.

Pace contends that the Board abused its discretion in refusing to allow litigation of representation issues in the unfair labor practice proceeding. It also challenges the Board's bargaining unit determination on several grounds, contending that: (1) the Board erred as a matter of law in basing its decision upon an inappropriate unit determination, contrary to the Act and Board precedent, whereby the unit included members who were ineligible to vote; (2) "casual employees" excluded from the bargaining unit are those adjuncts who are ineligible to vote, namely those who teach more than 3 credit hours and/or 45 hours in one semester, but have not done so for at least two of the last three academic years; and (3) there was not substantial evidence in the record that such adjuncts share a community of interest with other adjuncts as would justify placing them in the same bargaining unit. The Board seeks enforcement of its order on both procedural and substantive grounds.

The Board has broad discretion to define the contours of an appropriate bargaining unit. 29 U.S.C. § 159(b); *Skyline Distribs., Inc. v. NLRB*, 99 F.3d 403, 406-07 (D.C. Cir. 1996). Once a union is certified for a unit, the Act prohibits an employer from refusing to bargain with the union. 29 U.S.C. §§ 158(a)(1), (5); *see Exxon Chem. Co. v. NLRB*, 386 F.3d 1160, 1163-64 (D.C. Cir. 2004). The Board has authority under the Act "to make, amend, and rescind . . . such rules and regulations as may be necessary to carry out the provisions of this subchapter." 29 U.S.C. § 156. Under the Act and the Board's

rules, the representation proceeding is the forum designed for parties to contest the appropriateness of a bargaining unit. *Id*. § 159(b); 29 C.F.R. §§ 102.60-68.

The Board has drawn a "well established" line between representation and unfair labor practice proceedings, requiring that any issues that may be presented during the representation proceeding must be offered there. *Joseph T. Ryerson & Son, Inc. v. NLRB*, 216 F.3d 1146, 1151-52 (D.C. Cir. 2000) (quoting *Thomas-Davis Med. Ctrs. v. NLRB*, 157 F.3d 909, 912 (D.C. Cir. 1998)); *see Wackenhut Corp. v. NLRB*, 178 F.3d 543, 552-53 (D.C. Cir. 1999); *Westwood One Broad. Servs. Inc.*, 323 N.L.R.B. 1002, 1002 (1997); 29 C.F.R. § 102.67(f).[3] As a refusal-to-bargain unfair labor practice proceeding addresses a charge "based on the record made at the earlier representation proceeding," *Amalgamated Clothing Workers of Am. v. NLRB* (*ACWA I*), 365 F.2d 898, 903 (D.C. Cir. 1966), "a party must raise all of his available arguments in the representation

---

[3] The Board's regulations provide:

> The parties may, at any time, waive their right to request review [of a Regional Director's unit determination]. Failure to request review shall preclude such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding. Denial of a request for review shall constitute an affirmance of the [R]egional [D]irector's action which shall also preclude relitigating any such issues in any related subsequent unfair labor practice proceeding.

29 C.F.R. § 102.67(f).

proceeding rather than reserve them for an enforcement proceeding," *Prairie Tank S., Inc. v. NLRB,* 710 F.2d 1262, 1265 (7th Cir. 1983). There are only limited exceptions. *See Thomas-Davis*, 157 F.3d at 912-13; *Amalgamated Clothing Workers of Am. v. NLRB* (*ACWA II*), 424 F.2d 818, 829 (D.C. Cir. 1970); *Westwood One*, 323 N.L.R.B. at 1002; *see also* 29 C.F.R. § 102.65(e). For example, relitigation is allowed if "newly discovered evidence or other special circumstances requir[e] reexamination of the decision in the representation proceeding," *Joseph T. Ryerson*, 216 F.3d at 1151; *Soft Drink Workers Union Local 812 v. NLRB*, 937 F.2d 684, 688 (D.C. Cir. 1991), or if there is "legal authority . . . that changed governing law," *Alois Box Co., Inc. v. NLRB*, 216 F.3d 69, 78 (D.C. Cir. 2000). Such circumstances would arise, for example, where a new legal argument is based on after-arising or after-discovered facts. *Prairie Tank*, 710 F.2d at 1265. The rule thus requires litigation of any unit issues that a party has reason, ability, and opportunity to contest during the representation proceeding.

The purpose of the Board's non-relitigation rule is to "estop relitigation in a related proceeding . . . in accordance with the long-held objective of avoiding undue and unnecessary delay in representation elections." *ACWA I*, 365 F.2d at 905. In effect, the rule safeguards the results of a representation proceeding from duplicative, collateral attack in a related unfair labor practice proceeding. *See Westwood One*, 323 N.L.R.B. at 1002; *see also NLRB v. Mar Salle, Inc.*, 425 F.2d 566, 571-73 (D.C. Cir. 1970) (citing *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 158, 162 (1941)). Judicial enforcement of the rule in turn "protects the integrity of the administrative process by requiring a party to develop all arguments and present all available, relevant evidence at the representation proceeding," rather than "remain silent" and "ultimately defeat unionization on . . . grounds asserted for the first time in the ensuing unfair labor practice proceeding." *St. Anthony Hosp. Sys. v. NLRB*, 655 F.2d

1028, 1030 (10th Cir. 1981); *see also Mar Salle, Inc.*, 425 F.2d at 573.  Such enforcement is consistent with the basic principle that "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).

The court will not disturb the Board's application of its non-relitigation rule absent an abuse of discretion.  *Alois Box Co.*, 216 F.3d at 78; *Thomas-Davis*, 157 F.3d at 912.  The court has previously observed that it is "eminently reasonable" for the Board to deny a second round to a party who "had the opportunity to litigate all relevant issues previously," where there is no "newly discovered or previously unavailable evidence." *Mar Salle, Inc.*, 425 F.2d at 572 & n.10; *see NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 709 (2001) (citing *Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 139-41 (1971); *Pittsburgh Plate Glass Co.*, 313 U.S. at 161-62).  By contrast, a party who does litigate an issue in the appropriate forum may receive review of representation issues in due course; the court generally will review a representation issue upon the filing of a petition from an unfair labor practice proceeding as long as a party litigated the issue during the representation proceeding and presented its arguments on the issue as a defense to an unfair labor practice charge.  *Nathan Katz Realty, LLC v. NLRB*, 251 F.3d 981, 987 (D.C. Cir. 2001).  But in the absence of an abuse of discretion by the Board in applying the non-relitigation rule, a representation issue not previously litigated is not properly before the court upon a petition for review of an order in the unfair labor practice proceeding.  *Joseph T. Ryerson*, 216 F.3d at 1152; *see also* 29 U.S.C. § 160(e).

The record of the representation proceeding demonstrates that Pace had reason, ability, and opportunity to challenge the description of the unit but repeatedly declined to do so. The Regional Hearing Officer opened the February 2004 hearing on Pace's objection to the Union's proposed unit by discussing the dual objectives of the hearing — to determine the scope of the bargaining unit and the criteria for voter eligibility. Although Pace disagreed with the Hearing Officer's statement that these were "two distinct issues" and requested a stay, the Hearing Officer adopted the Union's amended definitions of the unit and voter eligibility, setting forth two separate categories. When asked during the hearing on several occasions by the Hearing Officer to identify its position on the issues, Pace stated only a general objection that the issues were intertwined and sought to have granted its pending motions to dismiss the certification petition, for a stay and transfer of the case to the Board, and for recusal and transfer to a different Region. Pace neither explained how the issues of unit scope and voter eligibility were intertwined nor presented the arguments it presents in its brief to the court that the Act and Board precedent require all members in the unit to be eligible to vote. By contrast, Pace argued that law school adjuncts should not be included in the bargaining unit, which led to a stipulation of the parties.

Pace's post-hearing letter seeking clarification of two footnotes in the Regional Director's Election Order also failed to argue that adjuncts who are "casual employees" should be excluded from the bargaining unit. Although the letter stated that the footnote on "casual employees" did not make sense, Pace did not present argument on this issue nor offer an explanation of how this definition should be changed. Neither did Pace seek Board review of the Amended Election Order even though its treatment of "casual employees" is not the same as that Pace attempted to urge during the unfair labor practice proceeding.

A mere reference to a potential issue is not the same as litigating an issue by making an objection clear on the record of the representation proceeding so as to preserve the right to review by the Board and the court. *See Alois Box Co.*, 216 F.3d at 78. Even assuming Pace's fleeting reference to a general objection to the member-voter distinction sufficed to note the issue, this is not tantamount to litigating specific concerns as is contemplated by the non-relitigation rule. "[A]n implicit argument is hardly the same as giving notice so the Board has an opportunity to rule on the argument." *Joseph T. Ryerson*, 216 F.3d at 1151; *see also Family Serv. Agency S.F. v. NLRB*, 163 F.3d 1369, 1380 (D.C. Cir. 1999). There were then-available arguments that Pace could have made that it now contends are dispositive, for example, in contending there is a lack of a community of interest between adjuncts who have served for longer than three credit hours in one as opposed to several academic years. It was Pace's concern about the sufficiency of the evidence to support the Union's proposed unit that was the occasion for the Hearing Officer to reopen the record and repeatedly attempt to discover the nature of Pace's objection to treating unit membership and voter eligibility as separate issues. Yet, Pace declined, through self-described experienced counsel, to respond in a manner that would alert the Hearing Officer or the Regional Director to the substantive basis for its concern. Given the centrality of the issue of the scope of the bargaining unit, Pace could not stand mute under the circumstances.

To the extent Pace now contends that the Board was required to make an exception to its non-relitigation rule due to Pace's reasonable reliance on an error in the Amended Election Order, there is neither an exception that would apply nor a basis for the exception it seeks. *See Thomas-Davis*, 157 F.3d at 912. Pace does not maintain there was either new evidence or new governing law. Instead, Pace suggests that there was no need to litigate the "casual employees" definition or member-voter

distinction until the unfair labor practice proceeding because it "believed the issue had been resolved in its favor." Pet.'s Reply Br. at 8-9. Pointing to a typographical error in a footnote in the Amended Election Order, *see supra* note 2, as evidence on which it could reasonably rely to believe it had received a favorable scope-of-unit ruling, Pace maintains that the footnote stated the status of the law on a member-voter distinction. However, the typographical error appeared at that time only in the narrative portion of the Amended Election Order, which misquoted the previously-issued Election Order. Critically, the error did not appear in the part of the Amended Election Order defining the scope of the unit. Neither did it appear in the Board's posted pre-election notices. Any confusion arising from the added text should have prompted experienced counsel to seek clarification or to state Pace's understanding on the record, not wait to raise the issue long after the election had occurred and the Board had certified the Union. As the Regional Director pointed out in resolving the Union's unit-clarification petition, "[t]he fact that [Pace] never addressed that issue strongly militates against accepting [its] position." Counsel's silence suggests a realization that the added text was inconsequential.

While Pace had every right to pursue a strategy seeking dismissal of the petition, or the other relief sought by its several motions, once the Hearing Officer reopened the record to address Pace's concerns about the unit and repeatedly inquired of its position, Pace took the risk that the Board would apply the non-relitigation rule if it did not present its position on the record. Pace does not suggest that the Hearing Officer or Regional Director acted contrary to Board procedures or rules in attempting to address Pace's concerns about the description of the unit. The Board found no bias by the Regional Director or Hearing Officer against Pace, and Pace does not pursue that issue in its petition for review. Curiously, Pace never has explained to the court why more time or information about the

number of adjuncts during a given semester would be needed to develop a legal argument that all members of the unit should be eligible to vote in the election. As the Regional Director found, Pace "has failed to identify any specific issue or unit contention that it was precluded from raising or litigating arising out of the fact that the adjunct faculty and part-time instructors had not yet begun to teach their classes for the Spring 2004 semester when the hearing commenced." Even assuming that Pace's contention in its reply brief, that it was not obligated to raise issues regarding the scope of the bargaining unit during the representation proceeding because the Board has the evidentiary burden on unit scope, is properly before the court, *but see Students Against Genocide v. Dep't of State*, 257 F.3d 828, 834-35 (D.C. Cir. 2001), Pace's reliance on *Allen Health Care Services*, 332 N.L.R.B. 1308 (2000), would be misplaced as nothing in that decision eliminated a party's obligation to present its objections to a proposed unit, notwithstanding the Board's recognition of its obligation to develop an evidentiary record supporting a unit definition, *id*. at 1309.

The court need not reach Pace's challenges to the Board's adoption of a distinction between unit membership and voter eligibility. Because Pace failed to make known its objections to the scope of the proposed bargaining unit when it had reason, ability, and opportunity to do so during the representation proceeding, the Board did not abuse its discretion in applying the non-relitigation rule. Accordingly, we deny the petition for review and grant the Board's cross-application for enforcement of its order.