RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BANNUM PLACE OF SAGINAW, LLC,
            *Petitioner/Cross-Respondent*,

    *v.*

NATIONAL LABOR RELATIONS BOARD,
            *Respondent/Cross-Petitioner*.

Nos. 21-2664/2690

───────────────

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board.
Nos. 07-CA-207685; 07-CA-211090; 07-CA-215356.

Decided and Filed: July 14, 2022

Before: MOORE, COLE, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:** Thomas R. Meagher, FOSTER SWIFT COLLINS & SMITH PC, Lansing, Michigan, for Petitioner/Cross-Respondent. Usha Dheenan, Joel A. Heller, Ruth E. Burdick, David Habenstreit, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent/Cross-Petitioner.

───────────────

## OPINION

───────────────

KAREN NELSON MOORE, Circuit Judge. Under the National Labor Relations Act ("Act"), the National Labor Relations Board ("Board") has jurisdiction over unfair labor practice claims brought against an "employer." 29 U.S.C. §§ 158(a), 160(a). Exempt from the definition of "employer" is the federal government. *Id*. § 152(2). In its petition for review of the Board's

decision finding that the company had committed unfair labor practices, Bannum Place of Saginaw, LLC ("Bannum") argues that it is a joint employer with the Federal Bureau of Prisons ("BOP") and thus falls within the federal-government exemption. The Board has filed a cross-application to enforce its order remedying the unfair labor practices. We hold that the Board had jurisdiction and that its order must be enforced.[1]

## I. BACKGROUND

Bannum is a private company that runs a residential reentry center in Saginaw, Michigan. Administrative Record ("A.R.") at 653 (Answer ¶ 2). The center offers transitional services that help recently released inmates from federal prisons seek employment, find housing, and reintegrate into society. *Id*. at 813 (Decision & Direction of Election ("Election Decision") at 2). Bannum manages this center under a contract with the BOP that regulates many day-to-day operations at the facility through a detailed set of requirements called the "Statement of Work." *Id*. at 886–1021 (Statement of Work).

In 2017, employees at Bannum met with Local 406, International Brotherhood of Teamsters (the "Union"), leading the Union to file an election petition with the Board and the Board to schedule a representation election. *Id*. at 1280 (NLRB Decision & Order ("NLRB Order") at 1). Bannum challenged the Board's jurisdiction to conduct the election, arguing to the Board's Regional Director that Bannum was a joint employer with the BOP because the terms of their contract gave substantial control over the company's daily operations to the agency. *Id*. at 811 (Election Decision at 1). The Regional Director rejected this argument. *Id*. Despite being informed of its right to seek review of this decision from the Board, *id*. at 829 (Election Decision at 18), Bannum did not do so. The Union subsequently won the election, and the Board certified it as the employees' exclusive representative. *Id*. at 1280 (NLRB Order at 1).

Bannum's efforts to prevent the Union from representing its workers were not limited to legal challenges, however. Both before and after the Union's certification, Bannum tried to dissuade its workers from supporting the Union. For example, the company interrogated

---

[1]Additionally, we grant the Board's motion to lodge in the record Bannum's brief filed before the Board in support of exceptions.

employees about their views on unions, threatened reprisals if they voted for the Union, and discharged known supporters of the Union. *Id*. at 1280–85 (NLRB Order at 1–5).

Such conduct led the Union and an employee to file unfair labor practice charges against Bannum. *Id*. at 1173 (Administrative Law Judge ("ALJ") Decision at 1). The Board then filed a complaint alleging that Bannum had engaged in unfair labor practices in violation of several provisions of 29 U.S.C. § 158. *Id*. at 1280 (NLRB Order at 1).

During the unfair labor practice proceedings that followed in 2020, Bannum moved to dismiss the complaint, reiterating the same joint-employer argument against the Board's jurisdiction that it had made in the representation proceedings. *Id*. at 640–50 (Mot. to Dismiss). An ALJ held a hearing, found that Bannum had raised the same argument before the Regional Director, and ruled that the Board's rule against relitigation precluded the company from raising the issue again. *Id*. at 12–14 (Hearing Tr. at 12–14). That rule prevents parties "from relitigating, in any related subsequent unfair labor practice proceedings, any issue which was, or could have been, raised in the representation proceeding" if they failed to request review of the Regional Director's actions by the Board. 29 C.F.R. § 102.67(g). During the hearing, the ALJ also presented Bannum with the opportunity to present evidence concerning any changed facts or law regarding jurisdiction since the representation proceeding. A.R. at 1174 (ALJ Decision at 2). Bannum did not do so. *Id*.

The ALJ ultimately concluded that Bannum had engaged in various unfair labor practices and ordered Bannum to cease and desist from the practices and to take affirmative steps to remedy the violations. *Id*. at 1200–03 (ALJ Decision at 28–31). Bannum filed exceptions and a supporting brief in which it objected to the ALJ's denial of its motion to dismiss for lack of jurisdiction. *Id*. at 1210 (Exceptions ¶ 1); App. R. 31 (Bannum Br. in Support of Exceptions at 47–48).

The Board affirmed the ALJ's denial of Bannum's motion to dismiss, holding that the rule against relitigation precluded the company from raising its joint-employer argument again. *Id*. at 1280 (NLRB Order at 1 n.1). The Board also found that Bannum had engaged in unfair

labor practices in violation of 29 U.S.C. § 158(a)(1), (3), and (4), and ordered that these violations be remedied. *Id*. at 1280–86 (NLRB Order at 1–6).

Pursuant to 29 U.S.C. § 160(f), Bannum has petitioned this court for review of the Board's final order. App. R. 1 (No. 21-2664) (Pet. for Review). The Board has cross-applied for enforcement under § 160(e). App. R. 1 (No. 21-2690) (Cross-Application).

## II. ANALYSIS

"Our review of the Board's decision is quite limited." *Caterpillar Logistics, Inc. v. NLRB*, 835 F.3d 536, 542 (6th Cir. 2016) (quoting *Torbitt & Castleman, Inc. v. NLRB*, 123 F.3d 899, 905 (6th Cir. 1997)). "We defer to the Board's factual determinations if they are supported by substantial evidence on the record as a whole." *Id*; *see also* 29 U.S.C. § 160(e), (f). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Caterpillar Logistics*, 835 F.3d at 542 (quoting *Dupont Dow Elastomers, L.L.C. v. NLRB*, 296 F.3d 495, 500 (6th Cir. 2002)). "The Board's application of law to the facts is also reviewed for substantial evidence, and its '[c]onclusions of law are subject to a de novo review, although [we] will uphold the Board's reasonable interpretation of the [National Labor Relations Act] where Congress has not spoken to the contrary on the same issue.'" *Id*. (alterations in original) (quoting *Dupont Dow Elastomers*, 296 F.3d at 500 (citation omitted)).

### A. Bannum's Challenge

Bannum reraises the argument that the company is a joint employer with the BOP and that this deprived the Board of jurisdiction to conduct the union-representation election. As a threshold matter, however, we must address the Board's argument that this issue is not properly before us. For this proposition, the Board points to its rule against relitigation, 29 C.F.R. § 102.67(g), arguing that Bannum's failure to comply with that rule "precludes further consideration now" of the company's previously raised joint-employer argument. Board Br. at 14. For the reasons that follow, we agree with the Board.

**1. The Rule Against Relitigation**

To understand what the rule against relitigation is and how it functions in this case requires some context about the Board's procedures and their history. Proceedings before the Board are normally split between two stages: a representation proceeding and then an unfair-labor-practice proceeding. At the representation stage, employees request that the Board conduct a union-representation election, as the Union did here when it filed its election petition with the Board. *See* 29 U.S.C. § 159. A Regional Director may then decide matters such as logistics pertaining to the election, the size of the bargaining unit, and the scope of the Board's jurisdiction. *See id*. § 153(b); 29 C.F.R. § 102.67(a)–(b). Again, that is akin to what occurred in the present case, this time when the Regional Director assessed and rejected Bannum's joint-employer argument.

If the employer is dissatisfied with the Regional Director's decision, then it has two options for requesting review. On the one hand, the employer may request that the Board review the Regional Director's decision. 29 C.F.R. § 102.67(c). (Here, the facts begin to diverge from the law—Bannum did not request that the Board review the Regional Director's rejection of its joint-employer argument.) The Board, however, will grant such requests "only where compelling reasons exist." *Id.* § 102.67(d). On the other hand, the employer can obtain judicial review of the Board's certification of the bargaining unit, but not directly from the representation proceeding. *Boire v. Greyhound Corp.*, 376 U.S. 473, 477 (1964). Instead, the Act requires that an employer "refuse to bargain with the union and then raise the issue of the unit's appropriateness in a subsequent unfair-labor-practice proceeding." *Kindred Nursing Ctrs. E., LLC v. NLRB*, 727 F.3d 552, 558 (6th Cir. 2013). Should the Board reject the employer's arguments at the unfair-labor-practice proceeding, the employer may then seek judicial review of the Board's decision in a federal circuit court. *See* 29 U.S.C. § 160(f); *Kindred Nursing Ctrs. E.*, 727 F.3d at 558; *see also Pace Univ. v. NLRB*, 514 F.3d 19, 24 (D.C. Cir. 2008) (explaining that a "court generally will review a representation issue upon the filing of a petition from an unfair labor practice proceeding as long as a party litigated the issue during the representation proceeding and presented its arguments on the issue as a defense to an unfair labor practice charge"). As will become clear, these two options, though distinct, are closely related.

The Regional Directors have come to play an important role in this two-step process. Before the 1960s, "the Board itself determined and certified for election, after hearing and investigation, the appropriate unit of employees for collective bargaining." *Ritz-Carlton Hotel Co. v. NLRB*, 123 F.3d 760, 762 (3d Cir. 1997). This created a "huge backlog" of representation petitions that the Board struggled to process. *Id*. Seeking to remedy this problem, Congress amended the Act "to allow the Board to delegate to its Regional Directors the power to determine the appropriate bargaining units, to direct elections, and to certify the results of such elections, subject to review by the Board." *Id*. The Board then "promulgated rules delegating the initial decisionmaking on representation issues to the Regional Directors, but retaining the authority in the Board to make the final administrative decision." *Id*. (citing 29 C.F.R. § 102.67). This delegation allowed the Board to ease its workload while retaining overall authority over the proceedings.

Among the rules that the Board promulgated after Congress amended the Act was the rule against relitigation, 29 C.F.R. § 102.67(g). *See generally Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 139–41 (1971) (detailing rule). Based on the Board's long-settled practice of requiring parties to litigate fully issues related to the certification of a bargaining unit when that matter is originally decided, *see Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 161–62 (1941); *NLRB v. Mar Salle, Inc.*, 425 F.2d 566, 571–72 (D.C. Cir. 1970), the rule against relitigation prevents parties who fail to request that the Board review a Regional Director's decision in a representation proceeding from relitigating "any issue which was, or could have been, raised" in that proceeding in "any related subsequent unfair labor practice proceeding," 29 C.F.R. § 102.67(g). In effect, the rule has "drawn a . . . line between representation and unfair labor practice proceedings, requiring that any issues that may be presented during the representation proceeding must be offered there" to the Board for its consideration. *Pace Univ.,* 514 F.3d at 23 (citing predecessor of 29 C.F.R. § 102.67(g)).

The rule against relitigation furthers several notable ends. First, by requiring that an employer seek the Board's review of the Regional Director's decision to preserve any arguments related to it, the rule increases the chances that the Board will be presented with objections to that decision. *See Ritz-Carlton Hotel Co.*, 123 F.3d at 762–63. This allows the Board to correct

errors in the certification order earlier rather than later, thus streamlining the process. Relatedly, the rule also prevents "undue and unnecessary delay in representation elections" by safeguarding "the results of a representation proceeding from duplicative, collateral attack in a related unfair labor practice proceeding." *Pace Univ.*, 514 F.3d at 24 (quoting *Amalgamated Clothing Workers of Am. v. NLRB*, 365 F.2d 898, 905 (D.C. Cir. 1966)).

To be served, these ends sometimes require judicial enforcement. *See id.* Although the Board cannot use its regulations to limit the issues that a court may consider, *Ritz-Carlton Hotel Co.*, 123 F.3d at 763, courts have consistently declined to review challenges to a Regional Director's decision that an employer could have, but did not, request that the Board review, *see, e.g.*, *id.* at 765 (applying predecessor of 29 C.F.R. § 102.67(g) in this fashion); *NLRB v. Rod-Ric Corp.*, 428 F.2d 948, 950 (5th Cir. 1970) (same); *NLRB v. Thompson Transp. Co.*, 406 F.2d 698, 701–02 (10th Cir. 1969) (same); *NLRB v. Rexall Chem. Co.*, 370 F.2d 363, 365–66 (1st Cir. 1967) (same). That consistency is reflected in our caselaw, which has followed the same course. *See NLRB v. Int'l Health Care, Inc.*, 898 F.2d 501, 504–05 (6th Cir. 1990); *Keco Indus., Inc. v. NLRB*, 458 F.2d 1356, 1357 (6th Cir. 1972) (order); *M.P.C. Cash-Way Lumber Co. v. NLRB*, 452 F.2d 1197, 1198 (6th Cir. 1971) (order).

This uniformity is unsurprising. It is a general principle of administrative law that courts will "not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). That principle applies equally in the context of the rule against relitigation, which incentivizes parties to have the Board consider objections and correct errors in a timely manner. *See Pace Univ.*, 514 F.3d at 24; *Ritz-Carlton Hotel Co.*, 123 F.3d at 763. Indeed, if this principle did not apply here, we "would undermine the congressional delegation of authority to promulgate administrative rules and procedures to the Board"—rules and procedures that include the rule against relitigation. *Ritz-Carlton Hotel Co.*, 123 F.3d at 765.

For this reason, we have followed other circuits and treated 29 C.F.R. § 102.67(g) as an administrative procedure that a party must first exhaust before seeking judicial review of the merits of a representation issue. *See Int'l Health Care, Inc.*, 898 F.2d at 504–05 (collecting

cases); *see also Ritz-Carlton Hotel Co.*, 123 F.3d at 763–64.  In other words, a party's failure to request that the Board review a Regional Director's decision to reject some argument in a representation proceeding will trigger our doctrine of administrative exhaustion once the party petitions for review from the unfair-labor-practice proceeding.  Under this well-established approach, the concepts of administrative exhaustion and the rule against relitigation are thus separate yet interrelated.

That approach largely settles this case.  Bannum presented its joint-employer argument to the Regional Director in the representation proceedings.  A.R. at 811 (Election Decision at 1). The Regional Director rejected this argument.  *Id*.  Given the opportunity to request that the Board review this decision, Bannum decided against it.  *Id*. at 829 (Election Decision at 18).  In its petition for review now pending before us, Bannum "does not suggest that the Board lacked authority to promulgate the [rule against relitigation, which] imposes a waiver when an objection has not been preserved, and we see no reason why that salutary procedure should not be followed by the courts as well."  *Ritz-Carlton Hotel Co.*, 123 F.3d at 765.  Therefore, because Bannum failed to exhaust the Board's administrative procedures, we decline to review the merits of Bannum's joint-employer argument.

Merits aside, we review the Board's application of the rule against relitigation in the unfair-labor-practice proceeding for abuse of discretion.  *See American Bread Co. v. NLRB*, 411 F.2d 147, 152 (6th Cir. 1969); *see also Pace Univ.*, 514 F.3d at 24.  "There are only limited exceptions" to the rule's application.  *Pace Univ.*, 514 F.3d at 23; *accord Salem Hosp. Corp. v. NLRB*, 808 F.3d 59, 73 (D.C. Cir. 2015).  One exception that would allow relitigation is if "newly discovered evidence or other special circumstances requir[e] reexamination of the decision in the representation proceeding."  *Pace Univ.*, 514 F.3d at 23 (quoting *Joseph T. Ryerson & Son, Inc. v. NLRB*, 216 F.3d 1146, 1151 (D.C. Cir. 2000)).  Another exception is when "legal authority . . . changed governing law."  *Id*. (quoting *Alois Box Co. v. NLRB*, 216 F.3d 69, 78 (D.C. Cir. 2000)).  As the D.C. Circuit has explained, these exceptions might "arise, for example, where a new legal argument is based on after-arising or after-discovered facts.  *Id*. at 23–24.

Such circumstances are not present here.  During the representation proceeding, the Regional Director considered Bannum's joint-employer argument and rejected it.  A.R. at 811 (Election Decision at 1).  The Regional Director then informed Bannum that the company could request that the Board review the decision.  *Id*. at 829 (Election Decision at 18).  Rather than seek review, Bannum waited to present the same arguments to the ALJ in the unfair-labor-practice proceedings three years later.  *Id*. at 1174 (ALJ Decision at 2).  The ALJ applied the rule against relitigation, but not before allowing Bannum

> to present evidence of (1) any changed facts since October 3, 2017, when the representation case (R case) hearing concluded; (2) any changes in the law since October 31, 2017, when the Regional Director issued a Decision and Direction of Election; and (3) any other evidence for which it could show good cause why it was not presented at the R case hearing.

*Id*.  Bannum did not pursue these options.  Consequently, Bannum has given us no reason to upend the Board's decision to apply the rule against relitigation.  The Board did not abuse its discretion.

### 2.  Relatedness of Proceedings

Against this conclusion, Bannum makes two arguments.  First, Bannum contends that the Board erred in applying the rule against relitigation because the representation proceeding was not related to the subsequent unfair-labor-practice proceeding.  As a general matter, Bannum is right to emphasize relatedness.  "The no-relitigation rule, as formulated in the Board's case law and rules, bars relitigation of a waived issue only in an unfair labor practice proceeding that is 'related' to the proceeding in which the waiver occurred."  *Thomas-Davis Med. Ctrs., P.C. v. NLRB*, 157 F.3d 909, 913 (D.C. Cir. 1998).  What this means here is that if the unfair-labor-practice proceeding in the present case were unrelated to the representation proceeding at issue, then the Board may have abused its discretion in applying the rule against relitigation.

Yet just as Bannum never requested review of the Regional Director's decision in the representation proceeding, the company also never raised arguments about relatedness to the Board in the unfair-labor-practice proceeding.  Bannum did not make this objection to the ALJ in that proceeding, *see* A.R. at 640–50 (Mot. to Dismiss), did not present the issue in its brief to the Board, *see* App. R. 31 (Bannum Br. in Support of Exceptions), and did not file a motion for

reconsideration with the Board to preserve the matter. By not raising this issue before the Board at all, Bannum has once again limited our ability to examine its arguments, this time for a statutory reason. As the Act makes clear, "[n]o objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). Therefore, barring "extraordinary circumstances," we may not consider the relatedness question. *See Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665 (1982). And Bannum has presented no such circumstances here.

### 3. Statutory Jurisdiction

In its other attempt to evade the consequences of its failure to seek review of the Regional Director's decision, Bannum emphasizes that its joint-employer argument undermines the Board's statutory jurisdiction. Specifically, Bannum argues that its contract with the BOP cedes so much control over daily operations to the government agency that the two are joint employers, making Bannum an exempt entity under § 2(2) of the Act, 29 U.S.C. § 152(2), and outside of the Board's authority to regulate the company. As a result, Bannum concludes that we must not enforce the rule against relitigation because the Board's statutory jurisdiction may be challenged "at any time." Bannum Br. at 17.

As background, the Board's jurisdiction comes in two forms: statutory and discretionary. Statutory jurisdiction, as the name suggests, is created by Congress. It empowers the Board to act if certain statutory requirements are met, such as when an "employer" engages in an unfair labor practice that affects interstate commerce. 29 U.S.C. §§ 158(a), 160(a). Whereas this source of law provides the Board with authority, discretionary jurisdiction limits it. In certain cases, the Board, "in its own discretion, choose[s] not to exercise the jurisdiction that it may otherwise invoke." *Pikeville United Methodist Hosp. of Ky. v. United Steelworkers of America, AFL-CIO-CLC*, 109 F.3d 1146, 1151 (6th Cir. 1997); *see also* 29 U.S.C. § 164(c)(1). To guide the exercise of its discretion, the Board has created monetary standards that different entities must meet before the Board will act. *Pikeville United Methodist Hosp.*, 109 F.3d at 1152 n.4. Because Bannum maintains that this case presents an instance of the Board's reach exceeding its

congressionally sanctioned grasp, we focus on the scope of the Board's statutory jurisdiction and whether challenges to it are barred by non-compliance with the rule against relitigation.

It is true that we have held that the issue of the Board's statutory jurisdiction "cannot be waived." *Mich. Cmty. Servs., Inc. v. NLRB*, 309 F.3d 348, 361 (6th Cir. 2002) (quoting *NLRB v. Ferraro's Bakery, Inc*., 353 F.2d 366, 369 (6th Cir. 1965)).  These cases, however, do not furnish much guidance for the present issue.  In neither *Michigan Community Services* nor *Ferraro's Bakery* did we deal with a party who had already litigated the issue of the Board's statutory jurisdiction and was seeking to revisit the matter in unfair-labor-practices litigation before us. This raises the question of whether the rule against relitigation applies in such instances similar to how res judicata principles apply to subject-matter jurisdiction.  *Cf. Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment.").  Regardless of the answer, we need not examine this problem further.  Both the text of § 2(2) and our precedents firmly establish that the Board has statutory jurisdiction over Bannum.

Section 2(2) of the Act confines the Board's regulatory authority to "employer[s]."  *See Pikeville United Methodist Hosp.*, 109 F.3d at 1151.  Under § 2(2), the definition of "employer"

> includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 152(2).  Absent from the text is any mention of "joint employers."  Instead, the section "simply and straightforwardly exempts only certain named governmental units and other organizations from the reach of the NLRB." *Pikeville United Methodist Hosp.*, 109 F.3d at 1152.

"If a statute's meaning is plain, the Board and reviewing courts 'must give effect to the unambiguously expressed intent of Congress.'" *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 398 (1996) (quoting *Chevron USA Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). Because Congress chose to exempt only a limited number of entities from the Act's definition of

"employer," the Board decided in *Management Training Corp.* "that it had jurisdiction over an employer with close ties to an exempt governmental entity." *Mich. Cmty. Servs.*, 309 F.3d at 351. In fact, the Board there interpreted § 2(2) as rendering the question of "[w]hether the private employer and the exempt entity are joint employers . . . irrelevant" for determining the Board's jurisdiction. *Mgmt. Training Corp.*, 317 N.L.R.B. 1355, 1358 n.16 (1995).

We have upheld this interpretation. In *Pikeville United Methodist Hospital*, a hospital asserted that it was exempt under § 2(2) by virtue of a lease that it had signed with the City of Pikeville. According to the hospital, this lease "vested such total control of the hospital's activities in the City that Pikeville United Methodist Hospital itself became a political subdivision of the State of Kentucky." 109 F.3d at 1151. To this end, the hospital contended that § 2(2) "mandated" that the Board consider the extent to which the State exercised control over the hospital to determine whether jurisdiction existed. *Id*. at 1152. We rejected this argument, stressing both the narrowness of the enumerated exemptions in § 2(2) and the reasonableness of *Management Training*'s interpretation of that provision. *Id*. at 1152–53.

Although *Pikeville United Methodist Hospital* concerned a lessee claiming to be a political subdivision of a State rather than a contractor claiming to be a joint employer with the federal government, the distinction does not make a difference under the statutory language. Every other circuit of which we are aware that has considered the issue has held that contractors are not exempt from the definition of "employers" in § 2(2) merely because a contract vests substantial control with a governmental entity over the contractor's daily operations. *See NLRB v. Young Women's Christian Ass'n*, 192 F.3d 1111, 1118 (8th Cir. 1999); *Aramark Corp. v. NLRB*, 179 F.3d 872, 879 (10th Cir. 1999) (en banc) (unanimous); *NLRB v. Fed. Sec., Inc.*, 154 F.3d 751, 754–55 (7th Cir. 1998); *Teledyne Econ. Dev. v. NLRB*, 108 F.3d 56, 59 (4th Cir. 1997). As the Tenth Circuit held, "because Congress has unambiguously limited the reach of the exemption in § 2(2) to governmental entities and wholly owned government corporations, this court will not extend the exemption to government contractors." *Aramark Corp.*, 179 F.3d at 878. Given the Supreme Court's instructions to avoid interpreting exemptions from the Act's coverage "expansively," *Holly Farms*, 517 U.S. at 399, we see no reason to part from this consensus.

Insofar as Bannum's jurisdictional challenge can be read as an argument that the Board exceeded its discretionary, rather than its statutory, authority, that argument also is not properly before us.  Unlike the issue of statutory jurisdiction, the issue of discretionary jurisdiction can be waived.  *Cf. Fed. Sec., Inc.*, 154 F.3d at 754 (noting that discretionary jurisdiction may be waived).  Because discretionary jurisdiction is a limit that the Board imposes on itself, Bannum needed to exhaust the Board's administrative procedures—that is, seek Board review of the Regional Director's decision about the company's joint-employer argument during the representation proceedings—before we would assess arguments related to that issue.

Additionally, we note that the cases from other circuits illustrate what Bannum could have done.  In each case, the employers argued to the Regional Directors in the representation proceedings that they were exempt entities under § 2(2) due to being government contractors. When the Regional Directors rejected this argument, however, the employers did not allow the decisions to go unchallenged.  Instead, the employers promptly requested that the Board review the Regional Directors' determinations.  After the Board rejected the employers' joint-employer arguments and the unions won the elections, the employers refused to bargain, the Board found that the employers had committed unfair labor practices, and the employers raised the issue of the Board's jurisdiction in their petitions for review.  *See Young Women's Christian Ass'n*, 192 F.3d at 1115; *Aramark Corp.*, 179 F.3d at 877; *Teledyne Econ. Dev.*, 108 F.3d at 58. Because the employers had exhausted their administrative remedies in each case, the Circuits decided the jurisdictional question without having to scrutinize how the rule against relitigation applied.  *See Young Women's Christian Ass'n*, 192 F.3d at 1118; *Aramark Corp.*, 179 F.3d at 879; *Teledyne Econ. Dev.*, 108 F.3d at 59.  Had Bannum followed these examples and sought Board review of the Regional Director's decision, the company would not find itself in need of skirting that rule.

In sum, even if Bannum's contract vests in the BOP substantial control over Bannum's daily operations, that does not transform the company from a covered employer into either a governmental entity or a wholly owned government corporation and thus beyond the Board's reach.  We hold that Bannum meets § 2(2)'s definition of "employer," and Bannum's attempt to sidestep the rule against relitigation fails.

**B. Enforcement of the Board's Order**

That leaves us with whether to enforce the Board's order.  Bannum's sole attempt to contest enforcement is a passing assertion that it "vigorously denies th[e] charges [of unfair labor practices] and emphatically disagrees as well with the credibility and other fact findings of the tribunals below."  Bannum Br. at 4 n.2.  Despite Bannum labelling its denial "vigorous," its argument is better described as "perfunctory," resulting in a waiver of the issue.  *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013).  The Board is entitled to the order's summary enforcement.  *Vanguard Fire & Supply Co. v. NLRB*, 468 F.3d 952, 956 (6th Cir. 2006).

### III.  CONCLUSION

For the foregoing reasons, we deny Bannum's petition for review and grant the Board's cross-application for enforcement.